**DOBRY v. DOBRY et al.**

No. 35853.

Supreme Court of Oklahoma.

Oct. 27, 1953.

Fogg, Fogg and Fogg, El Reno, for plaintiff in error.

Porta and Weaver and Ralph A. Myers, Jr., El Reno, for defendants in error.

BLACKBIRD, Justice.

The persons involved in this action are all descendants or members of the family, by blood or marriage, of A. F. Dobry, deceased, founder of the company now known as Dobry Flour Mills, Inc., Yukon, Oklahoma.

Plaintiff in error is a minority stockholder, and the individuals appearing herein as defendants in error are majority stockholders and directors, in said corporation. These parties will hereinafter be referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

The present controversy between the parties arose at a meeting of the stockholders of said corporation in July, 1952. In accord with the announced purpose of said meeting, a resolution was passed, by concurring vote of the majority stockholders, authorizing a sale of the corporation's assets because of deteriorating business conditions. Plaintiff was one of the minority dissenters. Thereafter he brought this action in the district court to enjoin such sale. After a hearing on the merits of his said application, the court entered judgment refusing it, and plaintiff herein appeals therefrom.

. His position was and is that in the action taken for the sale of the corporation, defendants violated Article X of its bylaws, and that the steps prescribed therein should have been taken to afford him or one or more other stockholders the option therein described of purchasing the stock of all the others who desired to sell. The substance of the pertinent parts of that Article provide that (a) In the event any stockholder desires to sell any of his or her shares, or (b) In the event by operation of law or by testamentary disposition, the stock of any deceased stockholder becomes vested in any person other than a child or lineal descendant or surviving spouse of a child or lineal descendant or survivor of Mary A. and A. T. Dobry, or (c) In the event of the alienation by sale or execution or foreclosure of lien or any forced process of the shares "of any stockholder; the corporation, in the first instance, and the other stockholders of the corporation in the second instance, shall have the right to purchase and acquire the stock held in either such circumstance * * *." Said Article goes on to provide that in the event one or more of the selling stockholders and the corporation and/or remaining stockholders fail to agree on the price to be paid for such stock, such price shall be ascertained by appraisal made by a committee of three persons whose identity and manner of appointment are described therein. The article also prescribes detailed procedure following the appraisal of such shares of stock, for their transfer on the records of the corporation, and other matters unnecessary herein to delineate.

The procedure followed by the corporation's board of directors in approaching the contemplated sale of the corporation's assets was that prescribed in this State's "Business Corporation Act", contained in Title 18 O.S. 1951 § 1.163 of said Act regarding sales of assets of domestic corporations provides that such a board may, by resolution, authorize the sale of all the property and assets of such corporation for certain purposes, but subdivision a, paragraph (4) thereof is as follows:

"(4) If such corporation be in a failing condition and such action be neces-sary to avoid greater losses, although such sale, lease. exchange, or other disposition of such property and assets not be necessary for the corporation to meet its liabilities, then matured or about to mature; provided, that in case such transaction shall be made for reason of a condition described in this paragraph, such transaction shall be authorized by the affirmative vote of the holders of at least a majority of the outstanding shares entitled to be voted thereupon at a shareholders' meeting duly called."

Plaintiff's position is that the sale of the corporation's assets as decided upon at the special stockholder's meeting, above described, would cause an equitable conversion and sale of his stock, thereby arbitrarily converting it into money and preventing him from selling his stock or purchasing defendants' stock under the terms and provisions of the above-quoted article. Defendants take the position that Article X does not apply to a sale of the corporation's entire assets such as is here involved, but that in such a sale the above-cited Act is controlling, and prescribes the only procedure to be followed, to the exclusion of the procedure prescribed by Article X, for sales of individual stockholders' shares in the "events". or in the situations described therein.

■ Such charter and bylaw provisions designed to prevent the transfer of corporation stock to "outsiders" such as is contained in Article X, though earlier declared void, as being in restraint of trade and contrary to public policy, have in a majority of the more recent cases been upheld as valid and binding contracts between stockholders, when the necessary elements are present. The only case, of which we are aware, in which such an agreement has been before this court, is Guaranty Laundry Co. v. Pulliam, 198 Okl. 667, 181 P.2d 1007, 1009, 2 A.L.R.2d 738. In that case, this court took cognizance of the rule previously laid down in other jurisdictions that such stock sale or transfer restrictions must be "strictly construed, and not enlarged by implication."

We have found no case directly adjudicating the question of whether a bylaw provision, like the one involved herein, applies to a voluntary, as distinguished from a forced or judicial, sale of a corporation's entire assets. However, the Annotations to the cited case, together with earlier Annotations at 138 A.L.R. 647, and 65 A.L.R. 1159, contain numerous cases in which the courts have refused to apply the provisions of such restrictive agreements to any kind of sale other than those specifically mentioned therein. See, for instance, those cited in the Annotations under Part II, Sec. 5, entitled: "Character of sale or transaction to which applicable."

We think it is plain from the wording of Article X that its provisions do not contemplate nor apply to a sale of the entire corporation or its assets, and that, by its own terms, it is confined to the exchange of stock between stockholders. But, assuming arguendo that it does apply to a sale of corporation assets, the procedure set forth therein is inconsistent and contrary to the provisions of our statutes pertaining to such sales. All of the reported cases we have found dealing with such inconsistency have upheld the state law over the particular corporation's charter, or bylaw provision, or stockholder's agreement involved, and frequent reference has been made in the various jurisdictions to provisions of their statutory grants of bylaw-making power to corporations similar to ours, in which such power extends only to bylaws not inconsistent "with the law of the land," Title 18 O.S. 1941 § 71(6), or "with the laws of this State". Title 18 O.S. 1951 § 1.19(3). Such decisions are in accord with the principle that restrictive agreements or bylaws like the one involved here are presumed to be made in contemplation of existing law and where inconsistent therewith or in contravention thereof, the law, of course, will control. See cases digested in 4 Oklahoma Digest, under Contracts, . As it is thus our view that Article X does not apply to a sale of the corporation's assets, it follows that said article affords plaintiff no basis for an injunction against such sale. (Here, he claims no other.) The trial court's judgment was therefore correct, and is hereby affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL and WILLIAMS, JJ., concur.