George OLLIE, Jr., F.L. Holton, Robert S. Kerr, Jr., William G. Kerr, Dave T. Blakeburn, Trustee for Virginia Collins, Stephen B. Holton, Genevieve Holton, Allene Conn, Lois Blasdel, Pearl Orr, sole heir of James F. Orr, deceased, Frank DeHart, J.L. Ford, Dorothea S. McGee, Marcia McGee Bieber, Patricia McGee Maino, Lowell D. Clark, Trustee for Lori Clark and Christy Clark, Frances M. Kerr, Breen M. Kerr, Jr., Breen M. Kerr, William D. Mobley, Trustee and Successor Trustee of Alpheus Varner as Trustee for certain shareholders of Central National Bank of Poteau, Oklahoma, Appellants,

v.

H.E. RAINBOLT, Neal H. Sims, and Ronald A. Sims, individually and as sole heirs of Ione Sims, deceased, Charles D. Saviers, and Boyd M. Saviers, individually and as Co-Trustees of the C.B. Saviers Testamentary Trust, Appellees.

George OLLIE, Jr., F.L. Holton, Robert S. Kerr, Jr., William G. Kerr, Dave T. Blakeburn, Trustee for Virginia Collins, Stephen B. Holton, Genevieve Holton, Allene Conn, Lois Blasdel, Pearl Orr, sole heir of James F. Orr, deceased, Frank DeHart, J.L. Ford, Dorothea S. McGee, Marcia McGee Bieber, Patricia McGee Maino, Lowell D. Clark, Trustee for Lori Clark and Christy Clark, Frances M. Kerr, Breen M. Kerr, Jr., Breen M. Kerr, William D. Mobley, Trustee and Successor Trustee of Alpheus Varner as Trustee for certain shareholders of Central National Bank of Poteau, Oklahoma, Appellants,

v.

H.E. RAINBOLT, Neal H. Sims, and Ronald A. Sims, individually and as sole heirs of Ione Sims, deceased, Charles D. Saviers, and Boyd M. Saviers, individually and as Co-Trustees of the C.B. Saviers Testamentary Trust, Appellees.

Nos. 57939, 58231.

Supreme Court of Oklahoma.

July 12, 1983.

Rehearing Denied Oct. 4, 1983.

James E. Hamilton, Hamilton, McBee & Warren, Poteau, Richard F. Campbell III, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellants.

Douglas W. Sanders, Poteau, Robert D. Nelon, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, for appellees.

James S. Boese, Gordon L. Miller, Robinson, Boese & Davidson, Tulsa, for amicus curiae.

Jack T. Crabtree, Jack T. Crabtree & Associates, Oklahoma City, for amicus curiae.

OPALA, Justice:

The issues presented for review are (1) Did the trial court err in granting summary disposition on the plaintiffs' first three claims? (2) Did the trial court err in determining that the plaintiffs lacked standing to seek injunctive relief against violations of state branch banking laws? and (3) Did the trial court properly grant affirmative relief by directing the plaintiff-bank officers to transfer the stock in suit? We answer the first two questions in the affirmative and the last in the negative.

Central to this dispute is an attempt by a third-party purchaser [Rainbolt] to buy the controlling interest in Central National Bank of Poteau, Oklahoma [CNB]. Minority shareholders of CNB entered into three separate right-of-first-refusal agreements. By their terms the shares of stock covered by each of these arrangements had to be offered to other shareholders bound by a similar agreement before those shares could be sold to a third party. Certain shareholders [joined by three other shareholders (the Stottsberry group) who were neither parties to the right-of-first-refusal arrangements nor parties herein] entered into a stock purchase agreement with Rainbolt. Rainbolt offered to buy 52,800 shares (52.8%) of the outstanding bank stock. A condition attached to the Rainbolt offer was that he would be bound *only* if he were able to purchase the entire 52,800 shares as a unit. The shareholders who were Rainbolt's optionees [defendants] next offered to the plaintiffs—the beneficiaries of the first-refusal right—their stock as well as that of the Stottsberry group which alone was valued at nearly 1.3 million dollars. The terms of the offer required the plaintiffs to purchase *all* the tendered stock, although the Stottsberry shares were not covered by any of the three right-of-first-refusal agreements. The plaintiffs chose to exercise the rights granted them by two of the three agreements, but declined to purchase the Stottsberry package.

A suit was then brought in federal court by CNB, its president and a CNB-director Holton (who was also a plaintiff in the present suit) against the selling shareholders and Rainbolt (the same defendants as in the instant action), alleging violations of various federal statutes and seeking to have the court declare their preemptive rights in the affected stock. Preliminary injunctive relief was denied and the plaintiffs appealed from the adverse order to the Court of Appeals for the Tenth Circuit.

Before the merits of the federal suit were reached, nineteen CNB shareholders brought this action in state court for (a) specific performance of the agreements, (b) tortious interference with their contractual relations, (c) injunctive relief from the transfer of stock and (d) an injunction to prevent the Rainbolt "takeover" of CNB in violation of state laws prohibiting branch banking. The state-court plaintiffs sought, but were denied, a preliminary injunction on the grounds of comity with the federal court. The plaintiffs then brought one of the two appeals now before us.

In the meantime, the federal court gave summary judgment for the defendants, declaring the three agreements in question were clear and unambiguous. The plaintiffs appealed from that judgment to the Court of Appeals for the Tenth Circuit.

In the state-court action the defendants sought summary judgment by interposing the federal court's decision. The trial court ruled in favor of the defendants, concluding

that the agreements were clear and unambiguous and that the plaintiffs failed to allege any material fact issue. This disposition put an end to the plaintiffs' quest for injunctive relief and for damages from an alleged tortious interference with their contract rights. The plaintiffs also met with an adverse ruling on their claim for injunctive relief to prevent a violation of the state law against branch banking. From this unfavorable judgment the plaintiffs lodged their second appeal. Both appeals—one from denial of preliminary injunction and the other from summary judgment—were consolidated for disposition by a single opinion.

## I.

The plaintiffs' primary contention is that the defendant shareholders violated their first-refusal right by offering all the stock as a package and by wrongfully rejecting their offer to purchase a portion of the tendered stock. They sought (a) specific performance of the agreements with respect to the 12,800 shares elected to be purchased;[1] (b) an injunction to prevent a transfer of any stock to Rainbolt and (c) damages from Rainbolt for tortiously interfering with their contract rights.

The trial court's disposition in favor of the defendants appears to be rested on two grounds: (1) the agreements were clear and unambiguous and hence no genuine controversy existed as to any material fact bearing upon their validity and (2) the federal-court adjudication was either preclusive or res judicata in its effect.

Pertinent language in the agreements provides that the signatories grant to the trustee, for the benefit of CNB stockholders,

"... the right of first refusal to buy all of the stock of the undersigned in said Bank. By this it is intended that before the undersigned will sell said stock, or any part thereof, to any other person,

legal beings, firm or corporation, other than named trustees, the undersigned will first offer to sell said stock to said trustee, upon the same terms and conditions and for the same price that the undersigned otherwise intends to sell to another ..."

The defendants contend that this language clearly means that if the existing CNB shareholders desired to exercise the rights conferred by the agreements, they had to elect to purchase the stock proposed to be sold "upon the same terms and conditions and for the same price" as that offered to the selling shareholders. Since the offer made to the selling shareholders was subject to the condition that the buyer (Rainbolt) acquire all 52,800 shares held by the seller, the trustee for the plaintiffs under the agreements must meet the terms of the proposed offer. The defendants considered the plaintiffs' proposal—an election to buy only 12,800 shares of the offered stock—as nothing more than a counteroffer.

The plaintiffs, on the other hand, assert that the language of the agreement is ambiguous. The contractual phrase "same terms and conditions" and the language limiting the scope of the agreements to shares held subject to it, they urge, is susceptible of differing interpretations. They assert that "intent" of the parties is the controlling principle. In such instances, they contend, parol testimony is admissible to determine the parties' intent at the time the agreement was executed. In order to exercise their rights under a strict interpretation of the term "condition", the plaintiffs argue, the Rainbolt offer would require them to purchase not only all of the shares subject to the agreements, but also shares of third parties not contemplated by the right-of-first-refusal arrangements. This result, they urge, has the effect of impairing their rights under the agreement which in turn demonstrates an ambiguity.

1. The three right-of-first-refusal agreements cover blocks of stock in the amounts of 7,200, 5,600 and 12,400. The plaintiffs elected to purchase the blocks of stock covered by the first two agreements, constituting a total of 12,800 shares.

▇▇ The parol evidence rule—15 O.S. 1981 § 137 [2]—provides that the execution of a contract in writing supersedes all oral negotiations or stipulations which preceded or accompanied the execution of the instrument. All previous oral discussions are merged into, and superseded by, the terms of the executed written agreement or instrument. Parol evidence cannot vary, modify or contradict the terms of the instrument.[3] Where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended. The intention of the parties cannot be determined from the surrounding circumstances, but must be gathered solely from the words used.[4] We do not view the parol evidence rule issue as decisive of this controversy. For the reasons to be stated, we conclude from a four-corners' examination of the contractual instrument in question that the right of first refusal in contention here does not contemplate within its terms a third party's offer by which a purchase is proposed as a package unit of stock that is affected by the right of first refusal as well as other stock that is not comprised within the option right. In short, it is our view that under the right of first refusal in litigation before us selling stockholders cannot bring within the option terms stock that is not expressly affected by the right of first refusal.

## II.

The agreements in suit expressly state that they grant "not an option, but rather the right of first refusal to buy all of the stock" of the selling shareholders. To properly construe these agreements, we must inquire into the nature of the preemptive right, and the legal obligations arising thereunder.

▇▇ A right of first refusal has been described as closely related in purpose to options and yet very dissimilar in other respects.[5] An option is essentially a continuing and irrevocable offer by the optioner, which cannot be withdrawn by him during the stated period. It vests in the optionee what is usually termed a power of acceptance, and when he accepts the offer in the prescribed manner, the option is deemed to have been exercised so as to create a binding bilateral contract.[6] A right of first refusal, on the other hand, is distinguished from an option. Because it is not an offer, it can create no power of acceptance. The right of preemption does not give to its holder the power to compel an unwilling owner to sell. It merely requires the owner, when and *if* he decides to sell, to offer the property first to the ·person entitled to the preemption on terms identical to those the owner has received from another and would hence be bound to accept from the preemptor (preemption obligee).[7]

A problem much like the one encountered here arises most often in a lease/purchase contract setting where the lessee-tenant has a right of first refusal entitling the lessee to purchase the leased premises, and the lessor-owner receives an offer from a third-party to purchase a larger tract including the leased premises. The majority view holds that the holder of the first-refusal option on a portion of a larger tract may not secure specific performance of his option which would require a conveyance to

**2.** The terms of 15 O.S.1981 § 137 provide: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

**3.** *Bleakley v. Bowlby*, Okl., 557 P.2d 894, 896 [1976]; *Dewberry v. Yellow Mfg. Acceptance Corp.*, Okl., 396 P.2d 522, 524 [1964].

**4.** *Meeks v. Harmon*, 207 Okl. 459, 250 P.2d 203, 207 [1952]; *Surety Royalty Company v. Sullivan*, Okl., 275 P.2d 259, 262–263 [1954].

**5.** 1A Corbin on Contracts § 261 [1963 ed]. A right of first refusal was recognized by this court in *Dobry v. Dobry*, Okl., 262 P.2d 691, 692 [1953]; *Guaranty Laundry Co. v. Pulliam*, 198 Okl. 667, 181 P.2d 1007, 1009 [1947].

**6.** 1A Corbin on Contracts §§ 259, 260 [1963 ed]; 1 Williston on Contracts §§ 61A, B, C and D [3rd ed]; *Diggs v. Siomporas*, 248 Md. 677, 237 A.2d 725, 727 [1968].

**7.** *Myers v. Lovetinsky*, 189 N.W.2d 571, 575 [Iowa 1971].

him of the whole property the owner desires to sell.[8] This view also denies to the lessee-tenant specific performance for only the option-encumbered part of the whole property. The rationale underlying the doctrine is that the owner should not be compelled to sell the particular property when he has never received an offer, or intended to sell the property, on the terms and conditions asserted by the option-holder.[9] An attempt to sell the larger tract is not to be taken as a manifestation of an intention on the part of the owner to sell the smaller (option-encumbered) portion separately.[10]

The tenant is not left without a remedy. The owner may be enjoined from making a conveyance of the whole. If the property has already been conveyed, the purchaser could be ordered to reconvey the option-encumbered portion to the owner.[11] The applicable rationale is that the lessor cannot act in derogation of the lessee's "first option" rights in the leased premises. Because the owner breached the tenant's preferential right by attempting to sell the leased premises as part of the larger tract, the tenant can seek injunctive relief to maintain the status quo until the end of the lease term, when his preferential right will have expired.[12]

The defendant shareholders in this case are not willing to offer their stock apart from the package deal. Nor are the plaintiffs willing to buy stock not covered by the right-of-refusal agreements. The plaintiffs have in fact offered to purchase but a portion of the stock that was offered.

The terms of 15 O.S.1981 § 152 provide that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting . . ." It is manifestly clear that when the preemptive right was agreed upon, both the selling stockholders and the plaintiffs contemplated a sale solely of the preemption-affected CNB stock. The right of first refusal specifies no price for the affected stock. According to the agreement, the price and other terms were to be supplied by the offer made by a third party.

■ It is basic in contract law that an acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer.[13] The same

8. *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488, 494–495 [1961]; *Aden v. Estate of Hathaway*, 162 Colo. 311, 427 P.2d 333, 334 [Col.1967].

9. *Myers v. Lovetinsky*, supra note 7 at 576; *Guaclides v. Kruse*, supra note 8 at 495; *C & B Wholesale Stationery v. S. DeBella*, 43 A.D.2d 579, 349 N.Y.S.2d 751, [1973]; *New Atlantic Garden v. Atlantic Garden Realty*, 201 A.D. 404, 194 N.Y.S. 34 [1922]; *L.E. Wallach, Inc. v. Toll*, 381 Pa. 423, 113 A.2d 258, [1955]; *Atlantic Refining Co. v. Wyoming National Bank*, 356 Pa. 226, 51 A.2d 719, [1947]; see also Annot. 170 A.L.R. 1068 [1947]; *Gyurkey v. Babler*, 103 Idaho 663, 651 P.2d 928 [Idaho 1982].

10. *Aden v. Estate of Hathaway*, supra note 8 at 334; *Guaclides v. Kruse*, supra note 8 at 493; *New Atlantic Garden v. Atlantic Garden Realty Corp.*, supra note 9; Cf. *Anderson v. Armour and Co.*, 205 Kan. 801, 473 P.2d 84, 89 [Kan. 1970]; *Straley v. Osborne*, 262 Md. 514, 278 A.2d 64, 69 [Md.1971].

11. *Radio WEBS, Inc. v. Tele-Media Corp.*, 249 Ga. 598, 292 S.E.2d 712, 715 [Ga.1982]; See also *Capalongo v. Giles*, 102 Misc.2d 1060, 425 N.Y.S.2d 225 [1981]; *New Atlantic Garden v. Atlantic Garden Realty Corp.*, supra note 9; Anno. 170 A.L.R. 1068 [1947].

12. *Myers v. Lovetinsky*, supra note 7 at 575; *Guaclides v. Kruse*, supra note 8 at 494–495; *Atlantic Refining Co. v. Wyoming National Bank*, supra note 9 at 772–773; *Straley v. Osborne*, supra note 10 at 70.

13. *Anderson v. Garrison*, Okl., 402 P.2d 873, 877 [1965]; *Young v. Roller*, 201 Okl. 99, 201 P.2d 793, 796 [1949]; *Fry v. Foster*, 179 Okl. 398, 65 P.2d 1224, 1226 [1937].

We are not unmindful that the strict common-law rule was modified by the terms of 12A O.S.1981 § 2–207. We regard these § 2–207 modifications inapplicable here because the specific terms of the right of first refusal expressly confined its operation to shares held by identified persons who were signatories of the agreements.

Under § 2–207 all additional or different terms in acceptance become part of the contract unless ". . . (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within

principle applies to the rights of first refusal. When a preemptive right calls upon the preemption holder to meet the terms identical to a third party's offer which the seller intends to accept, the outstanding offer becomes, in essence, by operation of the right of first refusal, the seller's offer to the preemption holder. In order to accept the offer, the preemption holder must fully meet the terms and conditions of the offer in his acceptance.

■ The right to purchase on the same "terms and conditions" gave the plaintiffs only the benefit of the same bargain to the preemption-encumbered stock as that which the sellers were willing to afford to their offeror. The addition of terms and conditions—such as those embodied in the Rainbolt offer—wholly unrelated to the purchase of the preemption-encumbered stock—is not satisfactory performance of the defendants' preemption-imposed obligation. It does not constitute a *bona fide* offer within the meaning of the agreement.

■ Since the defendant shareholders had not accepted any third-party offer that was confined to the preemption-encumbered stock, it cannot be said that their willingness to sell all their stock as part of a larger unit amounts to a commitment to sell it separately at the price offered by Rainbolt. An owner should not be compelled to sell property on terms and conditions to which he has not agreed or which he has not intended to accept. A preemption-affected seller, on the other hand, should not be allowed to defeat or impair a bargained-for "right of first refusal" by a package-deal offer that includes property which lies dehors the preemption obligation.

Neither the plaintiff nor the defendant shareholders are entitled to a position of superiority one over the other. The remedy properly to be afforded in this case calls on the court to enjoin the selling shareholders from transferring their ownership in the preemption-encumbered stock until they have received a *bona fide* offer that is unrelated to any other stock and have given the plaintiffs appropriate notice with opportunity to meet that offer in conformity to the right of first refusal.[14]

## III.

We reverse the trial court's denial of temporary injunction with directions to reconsider the plaintiffs' plea in a manner consistent with this opinion.

■ In the second and third causes of action—for injunctive relief and for damages for tortious interference with contract rights—alternative remedies were invoked to protect plaintiffs' interests in the right-of-first-refusal agreements. Plaintiffs sought to enjoin any further transfer of CNB stock until the case has been decided on the merits. The claim for tortious interference was rested on plaintiffs' own construction of their contract rights. We reject their position today for the reasons stated earlier in this opinion. Because we hold that the plaintiffs are not entitled to specific performance, the foundation for their claim to damages in the third cause of action must of necessity fail. This claim shall be dismissed without prejudice for mootness.

■ The trial court's summary adjudication of the plaintiffs' claims for specific performance, injunctive relief and tortious interference with their contract rights is

a reasonable time after notice of them is received . . . ." The record reveals that after the defendant shareholders submitted the Rainbolt offer to the plaintiffs, the plaintiffs replied with an offer to purchase only 12,800 of the 52,800 shares offered. *Two days later* the defendants notified the plaintiffs that (a) the offer required the simultaneous acquisition of the 52,800 shares and (b) that the Rainbolt offer was effective *only if* all of the 52,800 shares were acquired. The offer made by the selling share-

holders called for an undeviating acceptance. The altering terms of the plaintiffs' offer could not result in a contract.

14. Since there has not been a *bona fide* offer made solely for the preemption-encumbered stock as a unit, we do not intimate any opinion on whether a refusal by the plaintiffs to buy all the stock (covered by the three right-of-first-refusal agreements) as a unit operates as a rejection of the preemption offer.

reversed. Its disposition of the fourth cause of action—by ruling that plaintiffs have no standing to complain of a violation of the state law against branch banking—was in the nature of a judgment on the pleadings. This claim, we direct, must also be dismissed without prejudice. Since, by means of the proposed package-deal offer, Rainbolt is unable to secure a controlling interest of CNB, the injunctive relief sought in the fourth cause of action—to prevent Rainbolt's takeover of CNB as a violation of state branch banking laws—clearly stands moot.

While the plaintiffs cannot compel the defendants to sell but a portion of the package offer made to them by the third party [Rainbolt] and hence cannot have specific performance decreed in their favor, they, or some of them, could be entitled to certain equitable relief, unless the doctrine of res judicata/issue preclusion is successfully interposed. On remand, the defendant shareholders might be restrained from selling any preemption-affected stock until the plaintiffs shall have first been given notice of any contemplated sale thereof based upon a *bona fide* offer by a third party and have either exercised or relinquished their right to purchase that stock pursuant to the provisions of the agreements in contest. The title to the preemption-encumbered stock will, in the meantime, continue in the defendant shareholders until such time as they choose to dispose of their shares with full regard for the plaintiffs' right of first refusal.

### IV.

In granting summary judgment the trial court may have relied, in part, upon the doctrine of res judicata/issue preclusion. Its reason for barring *all* the plaintiffs from litigating the controversy over the right-of-first-refusal agreements was (a) Holton (a CNB director) was a party in both the state and federal actions, (b) according to the testimony adduced at the hearing on preliminary injunction, the directors of the bank (nonparties in the federal suit) had authorized CNB to bring the federal-court action and (c) the remaining plaintiff shareholders, though strangers to the federal-court case, were effectively represented there by Holton in his capacity as a shareholder and director.

The record is not crystal-clear whether the trial judge rested the judgment on his *own* construction of the contracts in contest or on the res judicata/issue preclusion doctrine. Because our pronouncement today grants *no* relief to either of the adversary parties, but instead remands the cause for further consideration, it is unnecessary to reach for decision the plaintiffs' argument that res judicata/issue preclusion was not properly invocable.[15] In any event, the record before us—consisting of the summary judgment materials and evidence adduced at the preliminary injunction hearing—is insufficient for an effective exploration of the factual issues that the res judicata/issue preclusion plea would raise.

The cause is remanded for further consideration not inconsistent with the views expressed herein.

BARNES, C.J., and IRWIN, HODGES, HARGRAVE and WILSON, JJ., concur.

SIMMS, V.C.J., and LAVENDER, J., dissent.

DOOLIN, J., disqualified.

---

**15.** Our conclusion is strengthened by the posture of the defendants' brief. *No* authority is cited therein, nor argument made, in support of res judicata/issue preclusion theory. The defendants seem to have abandoned their support for this theory *by calling upon us to construe* the right-of-first-refusal agreements as though there had been no prior binding adjudication in the federal-court action.