OSCN Found Document:LATIGO OIL & GAS v. BP AMERICA PRODUCTION CO.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 LATIGO OIL & GAS v. BP AMERICA PRODUCTION CO.
2024 OK 35
Case Number: 120969
Decided: 05/21/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 35, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

LATIGO OIL & GAS, INC., an Oklahoma corporation, Plaintiff/Appellee,
v.
BP AMERICA PRODUCTION COMPANY, a Delaware corporation, Defendant/Appellant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I
HONORABLE JON K. PARSLEY, TRIAL JUDGE

¶0 Latigo Oil & Gas, Inc., filed a Petition for Specific Performance, Breach of Contract, and Injunctive Relief against BP America Production Company to enforce its preferential right to purchase certain mineral interests offered for sale as part of a package-deal by BP to a third party. Prior to trial, Latigo filed an Application for Temporary Restraining Order and Preliminary Injunctive Relief requesting the trial court to enjoin BP from selling the burdened interests to the third-party buyer pending trial. The trial court granted Latigo's request for preliminary injunctive relief. The Court of Civil Appeals reversed the trial court's grant of preliminary injunctive relief finding the evidence did not show Latigo was likely to succeed on the merits. We granted certiorari and hold the trial court's grant of injunctive relief was not an abuse of discretion.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS OPINION VACATED; 
TRIAL COURT AFFIRMED.

Eric C. Money, Dawson A. Brotemarkle, HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C., Oklahoma City, Oklahoma and
Kyle Domnick, HODGDEN LAW FIRM, PLLC,, Woodward, Oklahoma, for Plaintiff/Appellee,

Anton J. Rupert, Geren T. Steiner, R. Baxter Lewallen, RUPERT & STEINER, PLLC, Oklahoma City, Oklahoma, for Defendant/Appellant.

OPINION

ROWE, V.C.J.:

BACKGROUND

¶1 On February 27, 1957, then-operator Cabot Carbon Company ("Cabot") and lessee Sinclair Oil & Gas Company ("Sinclair") entered into an Operating Agreement covering certain mineral interests located in Section 35, Township 4 North, Range 27 ECM, Beaver County, Oklahoma ("Section 35 Agreement"). On March 28, 1958, Cabot and Sinclair entered into an Operating Agreement covering certain mineral interests located in Section 31, Township 4 North, Range 27 ECM, Beaver County, Oklahoma ("Section 31 Agreement"). The Section 35 and Section 31 Agreements contain identical preferential right to purchase clauses stating, in relevant part:

In the event any party desires to sell or otherwise dispose of all or any part of its or their interest subject to this Agreement, the other party or parties hereto shall have a preferential right to purchase or acquire the same. In such event the selling or disposing party shall promptly communicate to the other party or parties hereto the offer received for said interest from a prospective transferee ready, willing, and able to purchase or acquire the same, together with the name and address of such prospective transferee. Said party or parties as may agree shall thereupon have an option for a period of ten (10) days after the receipt of said notice to acquire such interest under the same or substantially the same terms offered by such prospective transferee for such interest; provided, that any interest so acquired by more than one party hereto shall be shared by the parties purchasing the same in the proportion that the individual interest hereunder of each such purchasing or acquiring party bears to the total interest hereunder of all such purchasing or acquiring parties.

¶2 On March 15, 1960, Cabot and Sinclair entered into an Operating Agreement covering certain mineral interests located in Section 1, Township 3 North, Range 26 ECM, Beaver County, Oklahoma ("Section 1 Agreement"). The Section 1 Agreement contains a preferential right to purchase clause stating, in relevant part:

Should any party desire to sell all or any part of its interests under this contract, or its rights and interests in the Unit Area, it shall promptly give written notice to the other parties, with full information concerning its proposed sale, which shall include the name and address of the prospective purchaser (who must be ready, willing and able to purchase), the purchase price, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after receipt of the notice, to purchase on the same terms and conditions the interest which the other party proposes to sell; and, if this optional right is exercised, the purchasing parties shall share the purchased interest in the proportions that the interest of each bears to the total interest of all purchasing parties. However, there shall be no preferential right to purchase in those cases where any party wishes to mortgage its interests, or to dispose of its interests by merger, reorganization, consolidation, or sale of all of its assets, or a sale or transfer of its interests to a subsidiary or parent company, or subsidiary of a parent company, or to any company in which any one party owns a majority of the stock.

¶3 Plaintiff/Appellee Latigo Oil & Gas, Inc. ("Latigo") and Defendant/Appellant BP America Production Company ("BP") are successors-in-interest, respectively, to the three oil and gas Joint Operating Agreements originally entered into by Cabot and Sinclair. The current dispute revolves around the clause in each operating agreement granting Latigo, as successor-in-interest to the Cabot-Sinclair agreements, a preferential right to purchase.

¶4 On or around March 8, 2022, BP entered into a Purchase and Sale Agreement with VR4-Moriah, LP ("VR4") for the sale of several mineral interests nationwide owned by BP. The Purchase and Sale Agreement included BP's mineral interests in Section 35, Section 31, and Section 1 in Beaver County ("Subject Interests"), each of which is subject to a preferential right to purchase in favor of Latigo as successor-in-interest to the Cabot-Sinclair agreements. The VR4 Purchase and Sale Agreement involved a package-deal sale of multiple interests owned by BP, most of which were not covered by the Operating Agreements. The expected closing date of the Purchase and Sale Agreement was May 31, 2022, at which time BP intended to transfer its interests to VR4.

¶5 On April 6, 2022, BP provided Latigo with three Notices of Sale by certified mail conveying its intention to sell the Subject Interests to VR4. Latigo received the Notices on April 11, 2022. Each Notice recognized that the Operating Agreements gave Latigo a preferential right to purchase the Subject Interests. Additionally, BP attached a redacted copy of the VR4 Purchase and Sale Agreement which included a definition of Good Faith Allocations. BP maintains that VR4 allocated an amount of $60,000 for each interest burdened by a preferential right to purchase. Although the Subject Interests in this case vary in size from 20 net acres to nearly 180 net acres, each Notice allocated $60,000 as the sale price to each Subject Interest.[1] BP claims that these allocations were made in good faith while Latigo argues the allocations are in excess of the Subject Interests' market value as a means of discouraging Latigo from exercising its preferential rights. BP asserts that it did not calculate the allocations for each Subject Interest itself, but instead relied on allocations provided by VR4.

¶6 On or around April 13, 2022, Latigo informed BP that BP failed to comply with its Notice obligations under the Operating Agreements. Latigo maintained that BP failed to provide accurate Good Faith Allocations for the Subject Interests and thus, the Notice provided by BP failed to comply with its obligations in the Operating Agreement. Accordingly, Latigo expressed a demand for accurate Good Faith Allocations for each Subject Interest and additional preferential right Notices, stating that its deadline to exercise its preferential rights should be extended for the amount of time necessary for BP to meet its demands. Latigo informed BP that if its demands were not met within ten days, it intended to take legal action including but not limited to seeking injunctive relief.

¶7 On April 20, 2022, nine days after Latigo received BP's Notices, BP sent an email to Latigo stating that the allocations were determined in good faith. The following day, Latigo responded via email demanding strict proof that the allocations were made in good faith, reiterating that BP had not complied with its obligation in the Operating Agreements. On April 26, 2022, Latigo notified BP that it wished to exercise its preferential right to purchase all three Subject Interests at an allocated value of $5.[2] Despite Latigo's offer, BP claimed that Latigo had forfeited its preferential right to purchase the Subject Interests by not exercising its right to purchase within the ten-day period set forth in the Operating Agreements.

¶8 Latigo filed suit in Beaver County seeking claims for Specific Performance, Breach of Contract, and Injunctive Relief. Additionally, Latigo filed an Application for Temporary Restraining Order and Preliminary Injunctive Relief asking the trial court to enjoin BP from assigning the Subject Interests to VR4 until Latigo was provided with the opportunity to exercise its preferential rights. In Latigo's Application and Brief in Support, Latigo claimed it was likely to win on the merits because BP's Notices did not comply with the Operating Agreements by failing to provide a good faith allocation of the amounts to be paid for the Subject Interests.[3] Additionally, Latigo claimed it would suffer irreparable harm absent injunctive relief because the Subject Interests are "'unique real estate interests' whereby damages 'would not be capable of precise measurement.'"[4]

¶9 The trial court held a hearing on the Temporary Restraining Order in May 2022. After hearing the parties' arguments, the trial court granted Latigo's temporary restraining order until a final hearing on preliminary injunctive relief could be heard, finding that Latigo would suffer irreparable harm because the Subject Interests at issue are unique oil and gas interests. Additionally, the trial court temporarily enjoined, restrained, and prohibited BP from the sale of the Subject Interests, but did not restrain the sale of any other assets to VR4, until a final hearing on preliminary injunctive relief could be heard.

¶10 In June 2022, Latigo's request for preliminary injunctive relief was heard by the trial court. During the hearing, BP argued that injunctive relief was not proper because Latigo was unlikely to succeed on the contract dispute and that Latigo was not in danger of suffering irreparable harm. Specifically, BP asserted it had complied with the Notice requirements of the Operating Agreements by providing the terms of the Purchase and Sale Agreement and a description of what BP was planning to sell to VR4. BP also argued Latigo's claim, asserting the value of oil and gas interests are unique or difficult to ascertain, lacked legal precedent to support the granting of a temporary restraining order or injunction. Furthermore, BP maintained that any damages suffered by Latigo are capable of measurement.

¶11 The trial court found a likelihood of Latigo prevailing on the merits due to evidence suggesting BP may not have provided proper notice, and that Latigo's ten-day period to exercise its preferential right had not yet begun. Additionally, the trial court found a substantial likelihood of Latigo succeeding on the merits regarding the $60,000 allocation to each Subject Interest, due to the apparent presence of a bad-faith allocation of value by BP. The trial court also noted the lack of case law from Oklahoma dealing with whether oil and gas interests are so unique as to warrant injunctive relief and found Latigo would suffer irreparable harm absent preliminary injunctive relief. Moreover, the trial court found that no harm would come to BP if the court maintained the status quo, and no public interest would be harmed by the issuance of a preliminary injunction. The trial court prohibited BP's sale to VR4 for the Subject Properties until the lawsuit could proceed. On January 4, 2023, BP filed a Petition in Error asserting the trial court erred in granting preliminary injunctive relief to Latigo until the lawsuit could proceed.

¶12 On appeal, the Court of Civil Appeals ("COCA") found that BP did not owe Latigo a duty to provide a good-faith allocation of value to the interests burdened by Latigo's preferential right. Specifically, COCA found that whether the allocations provided by BP were inflated as alleged by Latigo was irrelevant, as the Notices provided by BP met the terms of the Operating Agreements. COCA held that Latigo failed to exercise its right to purchase pursuant to all three Operating Agreements and that even if Latigo had timely exercised its rights, it did not fully meet the terms and conditions of the offer in its acceptance.

¶13 In its Petition for Certiorari, Latigo seeks our review of whether the value allocated to individual interests subject to a preferential right to purchase sold as part of a package deal must be determined in good faith. In support of its request, Latigo urges us to apply our precedent set forth in Ollie v. Rainbolt, where we held that a seller "should not be allowed to defeat or impair a bargained-for 'right of first refusal' by a package-deal offer that includes property which lies dehors the preemption obligation." Ollie v. Rainbolt, 1983 OK 79, ¶ 21, 669 P.2d 275, 281.

STANDARD OF REVIEW

¶14 We review the granting of a preliminary injunction for an abuse of discretion. Owens v. Zumwalt, 2022 OK 14, ¶ 6, 503 P.3d 1211, 1214. We have found an abuse of discretion "occurs when a decision is clearly against the weight of the evidence, contrary to law, or contrary to established principles of equity." Id. We have further explained that "[a]n abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Fent v. Okla. Nat. Gas Co., 2001 OK 35, ¶ 12, 27 P.3d 477, 481.

¶15 Our jurisprudence requires an appellate court to overrule an order "if the trial court is deemed to have erred with respect to a pure, simple and unmixed question of law." Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 2002 OK 31, ¶ 5, 46 P.3d 698, 701. "A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion, or the decision is clearly against the weight of the evidence." Edwards v. Bd. Of Cnty Comm'rs of Canadian Cnty, 2015 OK 58, ¶ 11, 378 P.3d 54, 58. "To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." Murlin v. Pearman, 2016 OK 47, ¶ 17, 371 P.3d 1094, 1097. We will consider all the evidence on appeal to determine whether the trial court's granting of a preliminary injunction was an abuse of discretion. Dowell v. Pletcher, 2013 OK 50, ¶ 5, 304 P.3d 457, 460.

¶16 "[A] clear abuse of discretion standard includes appellate review of both fact and law issues: 'In order to determine whether there was an abuse of discretion, a review of the facts and the law is essential.'" Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591, 608 (quoting Bd. of Regents of Univ. of Oklahoma v. Nat'l Collegiate Athletic Ass'n, 1977 OK 17, ¶ 3, 561 P.2d 499, 502). Underlying questions of law are reviewed de novo. Lierly v. Tidewater Petroleum Corp., 2006 OK 47, ¶ 16, 139 P.3d 897, 903.

ARGUMENT

¶17 On appeal, Latigo argues that the Operating Agreements entitle it to a preferential right to purchase based on the actual value being paid for the Subject Interests, as opposed to the inflated value of the allocations. Specifically, Latigo maintains that the implied covenant of good faith and fair dealing in every contract requires that where an interest subject to a preferential right to purchase is part of a package deal offer, the value allocated to that interest should represent the true price being paid for that component of the package.[5] Additionally, Latigo emphasizes that this Court has yet to address whether an allocation of value within a package deal must be made in good faith. Latigo highlights that although there is no binding precedent on this matter, COCA resolved the substantive issue by holding that BP had no obligation to provide a good faith allocation of value to the interests burdened by Latigo's preferential right to purchase.

¶18 Latigo also maintains that COCA ignored precedent supporting Latigo's position that a package-deal offer is not a bona fide offer for the purposes of a preferential right to purchase, citing our holding in Ollie. COCA Op. ¶ 11 (citing Ollie, ¶¶ 18-19, 669 P.2d at 280-81). By contrast, BP maintains that it complied with the plain language of the Operating Agreements, which did not explicitly require a good faith allocated value be provided in the event of a package-deal offer. Further, BP argues that the allocated value furnished in the Notices was provided by VR4, satisfying BP's obligation to give Latigo notice of the offer price.

¶19 In Ollie, minority shareholders of a bank entered into three separate agreements granting them the right of first refusal for the purchase of certain shares before they could be sold to a third-party purchaser. Ollie, ¶ 2, 669 P.2d at 277. A third-party purchaser seeking to purchase a controlling interest in the bank made an offer to defendant shareholders to acquire a substantial portion of the bank's shares with the condition that the entire block be purchased as a package deal. Id. Defendant shareholders extended an offer to the minority shareholders that included not only the shares subject to the first right of refusal, but also additional shares not covered by any of the first right of refusal agreements. Id. The minority shareholders chose to exercise their right to purchase the stocks covered by the agreements but declined to purchase the additional shares, asserting that the package-deal offer violated their rights of first refusal. Id. ¶ 7, 669 P.2d at 278. The defendant shareholders treated the refusal to purchase all shares in the third-party offer as a rejection of the preemptive offer, upon which the minority shareholders sought a preliminary injunction to stop the sale of the preemption-affected shares. Id. ¶¶ 2-4, 669 P.2d at 277. After the trial court denied the request for preliminary injunctive relief, the minority shareholders appealed to this Court asking us to address whether the sale of stock violated their right of first refusal by offering the plaintiff minority shareholders the opportunity to purchase the entire package-deal offer including shares not covered by the agreements. Id. ¶¶ 4-7, 669 P.2d at 277-78. Though we recognized that the holder of a preemptive right to purchase must fully meet the terms of the third-party offer to exercise their right, we held that a "preemption-affected seller...should not be allowed to defeat or impair a bargained-for 'right of first refusal' by a package-deal offer that includes property which lies dehors the preemption obligation." Id. ¶¶ 19-21, 669 P.2d at 280-81. We reversed the trial court's denial of preliminary injunctive relief finding it inappropriate to permit a seller to circumvent a party's negotiated right of first refusal by offering a package deal that included interests not covered by such right. Id. ¶¶ 23-26, 669 P.2d at 281-82.

¶20 The circumstances in the present matter are distinguishable from those in Ollie, as today's case involves a preferential right to purchase oil and gas interests, not stock purchase agreements. In reversing the trial court's grant of Latigo's preliminary injunction, COCA relied on our discussion in Ollie where we stated the holder of a preferential right to purchase "must fully meet the terms and conditions of the offer in his acceptance."[6] However, COCA disregarded our explicit discussion in Ollie where we stated that package-deal offers are not considered bona fide offers for the purpose of right of first refusal agreements.[7] We note that in Ollie we reversed the trial court's denial of preliminary injunctive relief finding it inappropriate to permit a seller to circumvent a party's negotiated right of first refusal by offering a package deal that included interests not covered by such right. Id. ¶¶ 23-26, 669 P.2d at 281-82. Accordingly, while Ollie may offer some relevance, it is not dispositive, as we have yet to directly address this issue within the specific context of oil and gas interests.

¶21 Though our jurisprudence is silent on this issue, other states have required an independent valuation of property burdened by a right of first refusal when being sold in a package deal. The Supreme Court of Iowa faced a similar situation where a landlord owned a 94-acre farm and leased one half-acre of the farm to a tenant with a lease agreement containing a first right of refusal for the leased premises. Myers v. Lovetinsky, 189 N.W.2d 571, 573-74. The landlord gave third-party purchasers an option to purchase the farm including the leased area, and informed the tenant he could exercise the first right of refusal by paying the purchase price of the entire farm. Id. The Court noted "[t]his is a case in which landlords sell the whole farm including the demised premises to purchasers without separately pricing the demised premises and the rest of the farm. The decisions recognize in this kind of case...the landlord breaches the tenant's preferential right by so doing." Id. at 575.

¶22 The Supreme Court of Georgia has similarly held that when a portion of a package deal is subject to a right of first refusal, the package deal must be broken up and the price of the subject property must be "the actual price that the prospective third-party buyer would have offered for the burdened property. . . ." Country Visions Coop. v. Archer-Daniels-Midland Co., 2021 WI 35, ¶ 28, 958 N.W.2d 511, 522.

¶23 Similarly, the Idaho Supreme Court has noted that where burdened property is part of a package-deal sale, the party with the right of first refusal "is not entitled to a mere allocation, but rather to the benefit of the total bargain as it relates to the burdened lot" because otherwise "the door would be opened to a myriad of unscrupulous endeavors designed to defeat preemptive rights of purchase by manipulation of lot prices within the terms of a larger sale." Gyurkey v. Babler, 651 P.2d 928, 932-33 (Idaho 1982).[8]

¶24 Given the novelty of the legal questions presented in this case, the trial court opted to permit the parties to gather more evidence and engage in further fact-finding. Though we refrain from making a definitive ruling today as it would be premature, substantial support of Latigo's position can be found in both Ollie and in other jurisdictions which uphold that preferential rights are entitled to a good faith allocation of value in a package-deal offer. As a result, we hold that the trial court did not abuse its discretion in finding that Latigo satisfied the evidentiary threshold for a temporary injunction to issue.[9]

CONCLUSION

¶25 Where no legal precedent exists addressing whether the value allocated to individual interests subject to a preferential right to purchase sold as part of a package deal must be determined in good faith, the actions taken by the trial court cannot be considered clearly contrary to the law. Accordingly, the trial court's decision to grant a preliminary injunction temporarily prohibiting BP's sale of the Subject Interests until the lawsuit can proceed does not constitute an abuse of discretion. We affirm the trial court's decision to grant preliminary injunctive relief and remand for further proceedings consistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT AFFIRMED.

ALL JUSTICES CONCUR

FOOTNOTES

[1] Answer Br. of Appellee Latigo Oil & Gas Inc.. 1.

[2] The record is unclear as to whether the $5 allocation provided by Latigo in its notice to exercise its preferential right to purchase was per Subject Interest. Ryan Barbee, Vice President of Latigo, testified that the $5 allocation "was as wild as their $180,000 for the three values that they put, in my opinion." Transcript of Hearing on Plaintiff's Application for Temporary or Preliminary Injunctive Relief at 41 (June 3, 2022).

[3] Latigo argued that it was likely to win on the merits because BP was required to provide a good faith allocation of the amounts to be paid for the Subject Interests and by relying on "uniform, inflated calculations" BP breached its obligations under the Operating Agreements. Appellant's Br. in Chief. 9-10.

[4] Id.

[5] Latigo cites our holding in Panama Processes, S.A. v. Cities Serv. Co., where we stated, "Oklahoma jurisprudence recognizes the common-law notion that implied in every contract is a covenant of good faith and fair dealing." Panama Processes, S.A. v. Cities Serv. Co., 1990 OK 66, ¶ 34, 796 P.2d 276, 290.

[6] COCA Op. ¶ 11 (citing Ollie, ¶¶ 18-19, 669 P.2d at 280-81).

[7] We held, in relevant part:

An owner should not be compelled to sell property on terms and conditions to which he has not agreed or which he has not intended to accept. A preemption-affected seller, on the other hand, should not be allowed to defeat or impair a bargained-for "right of first refusal" by a package-deal offer that includes property which lies dehors the preemption obligation.

Neither the plaintiff nor the defendant shareholders are entitled to a position of superiority one over the other. The remedy properly to be afforded in this case calls on the court to enjoin the selling shareholders from transferring their ownership in the preemption-encumbered stock until they have received a bona fide offer that is unrelated to any other stock and have given the plaintiffs appropriate notice with opportunity to meet that offer in conformity to the right of first refusal.

Ollie, ¶¶ 21-22, 669 P.2d at 281.

[8] Though the decisions of other states are persuasive, they are not binding upon us. Hinds v. Dandee Mfg. Co., 1952 OK 181, ¶ 8, 243 P.2d 992, 994.

[9] To obtain a preliminary injunction, a plaintiff must demonstrate by clear and convincing evidence that four factors weigh in their favor: (1) the likelihood of success on the merits; (2) irreparable harm to the party seeking the relief if the injunction is denied; (3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest. Edwards v. Bd. Of Cnty Comm'rs of Canadian Cnty, 2015 OK 58, ¶ 12, 378 P.3d 54, 59.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1990 OK 66, 796 P.2d 276, 61 OBJ 1934, 
Panama Processes, S.A. v. Cities Service Co.
Discussed

 
1952 OK 181, 243 P.2d 992, 206 Okla 392, 
HINDS v. DANDEE MFG. CO.
Discussed

 
2001 OK 35, 27 P.3d 477, 72 OBJ 1185, 
FENT v. OKLAHOMA NATURAL GAS, CO.
Discussed

 
2002 OK 31, 46 P.3d 698, 
JONES, GIVENS, GOTCHER & BOGAN, P.C. v. BERGER
Discussed

 
2003 OK 10, 65 P.3d 591, 
CHRISTIAN v. GRAY
Discussed

 
2006 OK 47, 139 P.3d 897, 
LIERLY v. TIDEWATER PETROLEUM CORPORATION
Discussed

 
2013 OK 50, 304 P.3d 457, 
DOWELL v. PLETCHER
Discussed

 
1977 OK 17, 561 P.2d 499, 
BD. OF REGENTS, ETC. v. NAT. COLLEGIATE ATH. ASS'N
Discussed

 
2015 OK 58, 378 P.3d 54, 
EDWARDS v. BOARD OF COUNTY COMMISSIONERS
Discussed at Length

 
2016 OK 47, 371 P.3d 1094, 
MURLIN v. PEARMAN
Discussed

 
2022 OK 14, 503 P.3 1211, 
OWENS v. ZUMWALT
Cited

 
1983 OK 79, 669 P.2d 275, 
Ollie v. Rainbolt
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA