## SMALLEY v. BOND.

No. 11413—Opinion Filed July 24, 1923.

Rehearing Denied Sept. 25, 1923.

1. **Frauds, Statute of—Agreements Relating to Real Estate.**

Sub-section 5 of section 5034, Compiled Annotated Statutes of Okla. 1921, provides:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or by his agent: An agreement for the leasing for a longer period than one year or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

2. **Contracts — Requisites — Parties — Mutuality.**

It is essential to the existence of a contract that there should be, first, parties capable of contracting; second, their consent; third, a lawful object; fourth, sufficient cause or consideration. The consent must be mutual, and consent is not mutual unless the parties all agree upon the same thing in the same sense.

3. **Specific Performance — Statute of Frauds—Oral Contract with Agent to Buy Land.**

Where A. enters into the possession of real property belonging to B. upon a verbal contract with C., who purports to be the agent of B., and A. makes extensive alterations and pays a portion of the purchase price to C., the agent, without the formality of a written contract. the acts of A. are insufficient to take the case out of the statutes of frauds, and specific performance will not be decreed.

4. **Same—Payment of Taxes as Condition.**

Specific performance with a sale and transfer of land will not be decreed where there are taxes due on the property and the purchaser is not willing to take the title subject to the taxes.

5. **Same—Insufficiency of Petition.**

Record examined, and held, that the plaintiff's petition did not state a sufficient cause of action to entitle him to specific performance.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by A. J. Smalley against Mrs. Lula Bond to compel specific performance. Judg-

ment for defendant, and plaintiff brings error. Affirmed.

J. S. Arnote for plaintiff in error.

Guy L. Andrews, for defendant in error.

Opinion by RUTH, C. On the 23rd day of November, 1918, A. J. Smalley, plaintiff, commenced an action in the district court of Pittsburg county against Mrs. Lula Bond, defendant, for specific performance of an oral contract for the purchase and sale of lot 4, block 345, in the City of McAlester, Pittsburg county, Okla., and further praying for judgment requiring the defendant to pay all taxes, both general and special, due on said property.

The plaintiff sets up in his petition that on the_____day of September, 1918, the defendant was the owner in fee simple of the said lot and employed O. P. Williams as her agent to sell the real property in question, and that the plaintiff entered into negotiations with Williams for the purchase of the property, and entered into possession thereof, and made improvements to the extent of approximately $300, and further states in his petition that the sum he was to pay for said property was $550, $25 of which he had paid to Williams, and had deposited $525, being the balance, in the First National Bank of McAlester, Okla., and as part of his petition he sets up certain letters passing between said Williams, agent for defendant, and the defendant, and upon the authority of these letters the plaintiff claims that an oral contract for the purchase of the property was taken out of the statute of frauds requiring such contracts to be in writing.

It appears from the petition of the plaintiff that he was desirous of purchasing the house and land for a residence, and entered into negotiations with the said Williams, as agent; that all his transactions with Williams were oral, and no communications, either oral or written, passed between the plaintiff and the defendant, and plaintiff further states in his petition that Williams wrote a letter to the defendant telling her that he could obtain $500 for the property, to which the defendant replied to Williams under date of September 15th: "If you can send me $500 in cash for the place, send deed and I will sign it," to which Williams replied, under date of September 19th, stating that he could sell the property for $550 and his commission would be $30, and that there would have to be an abstract made and the patent recorded, and asked her to make out a deed and instruct her bank to send it to a bank in McAlester

and collect $500, that his commission would be $30; but in that letter he does not state to whom the deed should be made out, and Williams further states that he will render statement and will forward her whatever he saves out of the $50, being the difference between $500 and $550, for which the property was sold, and further says in said letter: "Of course, I take it that you have paid your taxes up to date, this would have to be done;" to which letter the defendant replied under date of October 12th, stating that she was sending the deed with draft for $514 attached, and makes no reference to the payment of taxes; but under date of October 28th, she again writes to her agent, Williams, in which she says:

"I am enclosing receipt for 1916 taxes upon lot 4, block 345; have not receipt for 1914, for reason that it burnt up in our home. I have written Mr. O'Neil about the taxes and will you please show this tax receipt and we can at least clear this part of the abstract. I will send the money to pay the paving taxes later."

The plaintiff further sets up in his petition a letter purported to have been written by the defendant's agent, O. P. Williams, in which he says: "It is not the fault of the buyer that you have not kept up the taxes. That will have to be paid anyway. They are bearing 18 per cent." And this letter, according to the petition, was written after the defendant had instructed the bank to return to her her deed.

To the petition of the plaintiff, the defendant files a demurrer, the first ground for which is that the matters and things set forth in the amended petition do not constitute a cause of action in favor of the plaintiff and against the defendant; second, that the matters and things alleged in the petition fall within the inhibition of the statute of frauds and the alleged contracts are unenforceable under the law in force in the state of Oklahoma; and upon hearing had, the court sustained the demurrer of the defendant, to which the plaintiff excepted, and upon motion of the defendant to dismiss the cause, the same was dismissed and plaintiff gave notice of appeal to the Supreme Court of Oklahoma, and this cause comes on before this court for review upon the judgment of the court in sustaining said demurrer.

It is conceded in the petition that the contract between the plaintiff and Williams, purported to be the agent of the defendant, was purely oral and that no communication ever passed between the plaintiff and defendant proper, but the plaintiff relied entirely upon the communications

passing between defendant and her agent, Williams.

Section 941, Revised Laws of Oklahoma, 1910, provides:

"The following contracts are invalid, unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or by his agent: * * * Fifth. An agreement for the * * * sale of real property, or of an interest therein."

This being the law, we are called upon to determine whether or not the verbal contract made between the plaintiff and the agent, Williams, taken in connection with the letters passing between Williams and his principal, took the transaction out of the statute of frauds, and whether or not it is such a case as will justify a decree of specific performance.

It has been well settled by this court that a valid contract under the statute of frauds may be made, evidenced by letters and telegrams signed by the parties to be charged (Atwood v. Rose, 32 Okla. 355, 122 Pac. 929) and that whether such writings constitute a contract is a question of law to be determined by the court is also equally well settled. American Jobbing Ass'n v. James, 24 Okla. 460, 103 Pac. 670.

"In an action for specific performance, it is not the function of a court of equity to enlarge upon negotiations between, or complete a contract for parties who have not themselves fully agreed upon its terms; but only to enforce rights arising out of a valid, existing agreement." Plante v. Fullerton, 46 Okla. 15, 148 Pac. 57.

It is true the plaintiff entered into the possession of the property upon the presumed authority of Williams to sell the property, and made some alterations and improvements thereon, necessitating the expenditure of $300, but it nowhere appears from the petition of the plaintiff that the minds of the parties ever met on the terms of the contract, as it appears from the plaintiff's petition that Williams notified the defendant that he could sell her property for $500, and she replied that, "If you can send me $500 cash for the place, send deed and I will sign it."

This letter was sent to her agent, and nothing appears to have been said about the plaintiff having already been given possession of the property, but it is apparent that Mrs. Bond, the defendant, wanted $500 cash sent to her before she would sign the deed; that thereupon the agent, Williams, changed the terms of the contract by stating that he could obtain $550 for the property and notified Mrs. Bond that she would

have to have an abstract made and her patent recorded, to which she replied that she was sending a deed with the draft for $514 attached and asked her agent to kindly see that the draft was taken up promptly.

To constitute a valid and enforceable contract there should be, first, parties capable of contracting; second, their consent; third, a lawful object; fourth, sufficient cause or consideration; and the consent of the parties must be mutual, and consent is not mutual unless the parties all agree on the same thing at the same time. In all the communications passing between the defendant and her agent, it does not appear that the minds of the parties ever met. First, there was the offer of $500, for which sum the defendant agreed to sell, provided $500 was sent to her in cash; the agent thereupon changed the terms of the sale to $550 and inserted conditions with reference to the furnishing of an abstract, putting the patent on record, and expressing the presumption that the taxes had been paid, and the defendant replied thereto that she would send deed with draft attached for $514 and asked that the draft be taken up promptly. It therefore appears that the defendant never agreed to sell her property, furnish an abstract of title, put patent on record, or to pay all taxes at any time prior to the time the plaintiff took possession of the property and made the alterations and improvements thereon, and this court has held in Plante v. Fullerton, 46 Okla. 11, 148 Pac. 87:

"In an action for specific performance of an alleged contract for the sale of realty, it is not the function of the court of equity to enlarge upon negotiations between, or to complete a contract for, parties who have not themselves agreed fully upon its terms, but only to enforce rights arising out of a valid, existing agreement."

In Atwood v. Rose, 32 Okla. 355, 122 Pac. 929, this court held:

"In a suit for specific performance of an alleged contract for the sale of land where it is alleged that the contract was made by an agent authorized in writing to make same by two joint owners of the land, and that such authority of the agent consisted of various letters and telegrams, it is essential to sustain such authority, that the writings relied upon must show that the agent at the moment of the attempted sale was clothed with authority to make the sale to the purchaser upon identical terms and that it was so made."

In Halsell v. Renfrow, 14 Okla. 674, 78 Pac. 118, 2 Ann Cas 286, affirmed, 202 U. S. 287, 50 L. Ed. 1032, 26 Sup. Ct. 610, it is held:

,'A contract for the sale of lands which equity will enforce must be certain in its terms with reference to the parties contracting, the terms of sale and the description of the property, and when that cannot be identified, specific performance will be denied"

In Plante v. Fullerton, supra, a somewhat similar condition arose as now confronts this court. In that case, which was an action for specific performance, it appears that Plante wrote Fullerton, asking him if a certain lot in Lawton was for sale, and received a reply from Fullerton in which it is said, "My lot in Lawton is for sale at $750," to which Plante replied by telegram, "I accept your proposition on lot; letter and deed follow;" and thereupon Plante followed this telegram by letter, in which he said, "I expect, of course, that the taxes are paid for 1909, and I want an abstract that will show the title good in you," and thereafter Fullerton withdrew his offer; in which the court, citing Atwood v. Rose, supra, said:

"None of these conditions or counter propositions were ever accepted or agreed to by the defendant. At no time did the minds of the parties meet. There was no mutual agreement and, therefore, no contract."

And quoting from Atwood v. Rose:

"No contract is complete without the mutual consent of all the necesasry parties to all its terms. An offer to sell imposes no obligations until it is accepted according to its terms. So long as the negotiation remains open, neither party is bound, the one may decline to accept, or the offer may be withdrawn by the other. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer. The offer of acceptance upon modified or added terms would be a new or counter proposal, which would require an acceptance according to its terms before it could be said that a contract had been made. 9 Cyc. 245-248, note C; 7 A. & E. Ency. Lad (2nd Ed.) 113; Green v. Cole, 103 Mo. 70, 15 S. W. 397; Braeutigam v. Edwards, 38 N. J. Eq. 542; Hartford. etc., Co. v. Jackson, 24 Conn. 514, 63 Am. Dec. 177; Anson on Contracts. 2; Minneapolis & St. L. Ry. Co. v. Columbus R. Mills, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 378; American Cases on Contracts, 74."

It further appears from the prayer of the petition of the plaintiff that specific performance for the payment of taxes by the defendant should be decreed. This court is without power to so do, and courts of equity in decreeing specific performance will not decree, the impossible, and this court could not decree money due for taxes out of the pocket or account of the defendant into the accounts of the county treasurer, and courts of equity will not decree the impossible or make foolish or frivolous orders.

The petition examined, and held that it wholly fails to state a cause of action, and finding no error in the court below in sustaining the demurrer thereto, the judgment of the court below, for the reasons herein stated, is affirmed. Affirmed.

By the Court: It is so ordered.