# EYSENBACH v. NORVELL.

No. 11251—Opinion Filed Oct. 9, 1923.

1. **Frauds, Statute Of—Oral Contract to Buy Land.**

N. made an oral contract with E. to purchase certain real estate and went into possession and made valuable improvements, and paid all of the purchase price but a small amount. Held, that the case was taken out of the statute of frauds.

2. **Same—Specific Performance.**

Where a purchaser of real estate under an oral contract enters into possession and makes valuable improvements on the land and pays all of the purchase price except a small amount and the parties cannot agree on the amount due, and the person from whom he bought brings an ejectment suit to recover the premises and for rents and profits, and the defendant answers and cross-petitions, asking that the court ascertain the amount due, and offers to pay same and prays for specific performance, the court may in its exercise of a sound discretion decree specific performance and impose such terms as are just and proper under the facts in the case.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from Superior Court, Tulsa County; L. J. Martin, Judge.

Action by Bessie C. Eysenbach against Woodson E. Norvell. Judgment for defendant, and plaintiff brings error. Affirmed.

Stuart, Cruce & Bland and E. J. Doerner, for plaintiff in error.

Edward E. Harvey, Frank F. Allen, and Woodson E. Norvell, for defendant in error.

Opinion by MAXEY, C. The parties appear in this court as they did in the court below, and will be so referred to herein. On August 29, 1913, the plaintiff contracted to sell the defendant lot No. 6, block No. 5, Grandview addition to the town of Tulsa. According to the defendant's testimony he was to pay $400 for the lot, to be paid $50 in cash and $10 per month until the balance was paid; that on the 30th day of August, the defendant entered into possession of said premises and commenced erecting a sanitary sewer, and did erect said sewer at a cost of about $200; that on October 30, the defendant handed to O. K. Eysenbach his check for $100, payable to the plaintiff, Bessie C. Eyesenbach, which was cashed at the bank by plaintiff, and that he continued to make payments from time to time until he had paid all but about $50 on the purchase price of said lot: the last payment being made in March, 1917. All of the negotiations were made between the defendant and the husband of Bessie C. Eysenbach, and the payments were all made to the plaintiff by check, through her husband. The plaintiff and the defendant had been neighbors and very friendly for some years before this transaction. The defendant had been cultivating the lot, as a garden, with consent of the plaintiff, for two or three years prior to the contract of purchase, and that, no doubt, accounts for the loose way in which they transacted business with each other. In addition

to, putting in the sanitary sewer, above mentioned, the defendant built two small houses on the lot and rented them to tenants, and collected the rents without any objection from the plaintiff. O. K. Eysenbach was placed on the witness stand and he remembered the transaction a little different from Mr. Norvell, the defendant. He said the contract price was $475, and the payments were to be $50 cash and balance in 30 days but that he had never pressed the defendant for the payments, as he understood he was not very flush with money, and he was improving the property and making it more valuable all the time, and he felt that they could very safely wait and not be too hard on the defendant while he was improving the property. At any rate the matter of paying for the lot dragged along from August, 1913, until early in the spring of 1917 when the defendant gave O. K. Eysenbach a check for the plaintiff for $75, and asked him to look the matter up and see what the balance was, and that he would also look over his checks and accounts and see what his books showed. Each of them stated, at the time this last $75 check was given, that he did not know just what the balance was, but each agreed to look it up. Nothing further was done until this suit was brought by the plaintiff on the 8th day of August, 1917. The petition is in the ordinary form in ejectment, and for rents and profits during the time defendant had been in possession. Defendant filed answer and set up the oral agreement between himself and the plaintiff, through her agent, O. K. Eysenbach, to purchase said lot on August 29, 1913, and alleged that he had placed various improvements on said lot, consisting of a sanitary sewer, which cost about $200, and had built two small residences on the lot, and had made payments on it to the amount of about $350, and that the reason he had not paid the balance of the purchase price was that he and the agent of the plaintiff could not agree on the amount. Plaintiff filed a reply admitting that defendant had placed improvements on the lot, but alleged that the two houses placed on the lot were not worth over $900. The testimony offered by the defendant, he taking the burden of proof, was to the effect that on the 29th day of August he made an oral contract with O. K. Eysenbach, who was acting as agent of the plaintiff, whereby he purchased the lot in controversy for $400, to be paid $50 cash and $10 a month; that he had erected a sanitary sewer on the said premises, by and with the consent of the plaintiff,

and had erected two small residences on the lot at a cost of about $1,500, and had been continuously in possession of the premises since August 30, 1913, and had paid from time to time on the purchase price until he had paid about $350, and that he stood ready and willing to pay the balance as soon as the amount could be determined. O. K. Eysenbach testified that he did make the agreement with the defendant to sell the lot in question, but that the price was to be $475 instead of $400 and he was not able to tell just exactly how much had been paid, but differed from the defendant as to the exact amount, his recollection being that defendant had not paid as much as $350; that he had been lenient with the defendant about the payments, for the reason that he was improving the property and making it more valuable all the time, but that he had asked him about the balance several times, and the defendant would promise to take care of it in a short time. The plaintiff, Bessie C. Eysenbach, testified that the lot was her property: that she knew of her husband selling it to the defendant, and that he was acting as her agent in the matter and she made no objection to it, and that she received the checks given by the defendant from time to time, and had gotten the money on them. This is substantially the testimony given on the trial.

At the conclusion of the testimony, the court finds the facts as follows:

"The court finds from the facts in this case that the plaintiff B. C. Eysenbach was the wife of O. K. Eysenbach at all times hereinafter mentioned; and that on the 29th day of August, 1913, defendant entered into an oral contract with O. K. Eysenbach husband of the plaintiff in this action to purchase the lot described in the petition and that the agreed price was $475 and that on October 30, 1913, the defendant delivered to O. K. Eysenbach a check in favor of Bessie C. Eysenbach for the sum of $100 indorsed as follows: 'On lot 6, block 5, Grandview addition, balance $300.' "

Said check was duly received by Bessie C. Eysenbach, and the proceeds thereof.

It is contended on the part of the plaintiff that the said lot was to be paid for $50 cash at the time of the purchase and the balance within 30 days, and it is contended by the defendant the amount was to be paid, $50 cash and the balance in monthly payments. Payments were made at different times on said lot, to wit: October 30, 1913, $100; December 31, 1914,

$100; December 31, 1915, $50; September 4, 1916, $25; March 1, 1917, $75. All of which payments were received by the plaintiff, Bessie C. Eysenbach. The parties then stipulated in open court that the balance remaining due and unpaid upon said lot by the defendant is $216.90, which included interest on the deferred payments. The court further found that the defendant had been in possession of the premises since he purchased them, and had erected two houses thereon at a cost of $1,500, with the knowledge and consent of the plaintiff, and that he had been receiving the rents and profits from said houses since they were built, amounting to the sum of $1,500. The court then finds that the defendant is indebted to the plaintiff for the balance due on said contract, including interest, in the sum of $216.90, and decreed specific performance of the contract upon the payment of said amount, with the costs of this action, by the defendant to the clerk of the court within ten days from the date of said decree, and that upon payment of said amount into the court, with costs, the plaintiff should execute to the defendant, Woodson E. Norvell, a good and sufficient deed to the premises in controversy, and in case plaintiff failed to execute said deed, that then the sheriff should execute a deed to the defendant for said premises conveying all of the title of the plaintiff to the defendant. Within the time required the defendant deposited with the clerk of the court the amount so required. The plaintiff filed a motion for a new trial, which was overruled. Plaintiff excepted and took time to prepare and present case-made, and the case was appealed to this court, and on the 30th day of September, 1919, plaintiff filed a supersedeas bond and the case is before this court for review, and plaintiff has assigned 12 specific alleged errors, which plaintiff has grouped under four propositions, which we will take up in their order.

The first proposition is, the contract in question, which was an oral contract for the sale, by the plaintiff on the one hand, and the purchase, by the defendant on the other hand, of real estate, was clearly within the statute of frauds. Counsel on both sides seem to have tried this case on the theory that there had to be some written memorandum to take the case out of the statute of frauds. The case does not rest on any such principle. The contract in this case was an oral contract for the purchase of real estate, and was taken out of the statute of frauds by part payment

and the purchaser going into possession and erecting improvements thereon, with the consent of the party from whom he purchased. So that this proposition does not enter into the case and the authorities cited are not applicable to the facts in this case.

The second proposition is, when the statute of frauds requires the authority of the agent to be in writing, the ratification must be the same as required in the first instance. We do not think there is anything in this proposition. As before stated, this was a contract for the purchase of real estate and part payment with possession took the case out of the statute of frauds, and this proposition is not applicable to the record in this case, and the authorities cited under this proposition are therefore inapplicable to the facts in this case.

The third proposition is, when possession and valuable improvements are relied upon to take the transaction beyond the operation of the statute of frauds, the cost of improvements must exceed the amount of rent received by the vendee during his possession, and specific performance will not be decreed where the situation of the parties remains status quo. There is one important element that applies to this case left out of the above proposition. Not only are possession and the valuable improvements relied on, but the payment of the purchase price, with the exception of a small amount, is also relied on. So far as the improvements are concerned there is no question under the testimony, giving it the full benefit. All of the testimony shows that the improvements far exceed the amount of rent received. The evidence shows that the improvements cost $1,500 for the two small houses and $200 for the sanitary sewer. The rental value of the improvements is not very clear from the testimony, and the testimony does not show whether they were continuously occupied, but it is fair to presume that houses of that cost would not rent for over $15 per month, even in Tulsa. But, as before stated, the evidence does not show whether they were occupied all the time and we do not deem this very material. Under the facts in this case, the court heard the testimony and found that the balance due on the purchase price, including interest on deferred payments, was $216.90. We think this finding is well supported by the evidence. So we pass to the fourth proposition, which is as follows: The theory on which an oral contract for the purchase of lands is taken beyond the operation of the statute of frauds

by reason, of possession by the vendee, and the placing of improvements on the land in question. is that of equitable estoppel To apply the doctrine of equitable estoppel, the moving party must not have been guilty of laches, and specific performance will only be decreed where the moving party has fully performed the terms of the contract as required on his part to be performed. We do not think under the facts in this case that the question of laches can be invoked. While there was a difference between the plaintiff and the defendant as to just what the terms of the contract were, it is an outstanding fact in the case that neither one paid but very little attention to a compliance with the terms of the contract whatever they may have been in regard to payment. They were neighbors and friends, and, as stated by plaintiff's husband, he knew the defendant was improving the property and making it more valuable and he did not insist on the payments as they came due. In the case of Fulkerson et al. v. Mara, 68 Okla. 272, 173 Pac. 811, this court said:

"An oral contract for the purchase of real estate where part payment of the purchase price has been made and the vendee goes into possession of said property in good faith and makes valuable improvements thereon, takes the contract out of statute of frauds, and is such a part performance of the contract as to warrant a court in decreeing specific performance of the contract."

This is a comparatively recent expression of this court and our attention has not been called to any case to the contrary. This case also holds that specific performance is not an absolute right; it is a right resting on judicial discretion of the court to be exercised in accordance with the principles of equity. That being so, each case as it arises must be tested by the principle of equity applied to the particular facts of the case. Applying this rule to the case under consideration, we will say that we have carefully examined the record, read all of the testimony, and given due consideration to the briefs of respective counsel, and we are not able to say that the findings of the court are not supported by the weight of the testimony. The fact is, there is very little conflict in the testimony except as to the amount that was to be paid, and the amount that had been paid at the time of the institution of this suit. The court found for the plaintiff on these two issues, and the balance found due was agreed to by the parties in open court and the findings of the court so show.

Our attention has been called to the late case of Smalley v. Bond, 92 Okla. 178, 218 Pac. 513, and we do not think that case changes the rule heretofore announced, and we find nothing therein that would justify us in reversing this case. We think the judgment of the trial court is proper and that he did not abuse the discretion vested in him, and that the judgment should be affirmed.

By the Court: It is so ordered.