Margaret BECK and Bill
Beck, Appellees,

v.

Jack H. REYNOLDS, M.D., Kathryn
Pierce, as Personal Representative of
the Estate of C.J. Pierce, Jr., Deceased,
Pierce Pharmacy, Inc., and Smith Kline
& French Laboratories, a division of
SmithKline Corp., Defendants,

Physicians Liability Insurance
Company, Appellant.

No. 82376.

Supreme Court of Oklahoma.

July 18, 1995.

Rehearing Denied Sept. 27, 1995.

Bond, Matthews, Bonds & Hayes by Albert R. Matthews and James H. Abrams, Jr., Muskogee, for appellees.

Short, Wiggins, Margo & Adler by George F. Short and Cynthia L. Sparling, Oklahoma City, for appellant Physicians Liability Ins. Co.

HODGES, Justice.

The issue in this case is whether the trial court erred in reforming the contract based on a finding of constructive fraud.

## I. Facts

In 1978, defendant Dr. Reynolds prescribed a drug known as Comid to plaintiff Margaret Beck. As a result of taking the drug, Mrs. Beck developed tardive dyskinesia. Mr. and Mrs. Beck sued Dr. Reynolds alleging medical malpractice. They also sued the druggist and the drug manufacturer, and these claims were settled early and are not part of this appeal.

From 1978 to 1980, Dr. Reynolds purchased malpractice insurance from Hartford Insurance Company (Hartford) for the policy limit of $100,000.00 for each year. From 1980 through 1986, Dr. Reynolds purchased malpractice insurance from Physicians Liability Insurance Company (PLICO). The policy limit for the PLICO coverage was $100,000.00 except for the year 1984 when the policy limit was $1,000,000.00.

The case went to trial. During the trial, the parties reached a settlement agreement. During the settlement negotiations, the Becks offered to settle for $499,000. This offer was rejected, and the parties continued negotiating. During the negotiations, PLICO represented to both Dr. Reynolds and the Becks that the limits on the policies were $100,000.00. There is no allegation that this misrepresentation was done with intent to mislead, but all the evidence shows it was an honest mistake. Based on this representation, the parties reached a settlement and the Becks dismissed the case.

PLICO asserts the agreement was for $201,000.00 which has been paid. Hartford paid $100,000.00, PLICO paid $100,000.00, and Dr. Reynolds paid $1,000.00. The plaintiffs assert that the agreement was for the policy limits which they avow was $1,000,000.00 under the PLICO policy. Based on the settlement agreement, the plaintiffs signed a release of all claims in consideration of the payment of $201,000.00. The release reflected that it was a complete recitation of the parties' agreement.

After discovering the limit of the 1984 PLICO policy was $1,000,000.00, the plaintiffs filed a Motion to Compel Settlement requesting the trial court to enter judgment against PLICO for $900,000.00, the policy limit in 1984 less the $100,000.00 previous paid. Over PLICO's objection, the district court entered the judgment for $900,000.00 based on constructive fraud. The Court of Appeals reversed the judgment of the trial court. The Court of Appeals found the set-

tlement agreement was void based on a mutual mistake.

## II. The Contract

■ We agree with PLICO that the agreement was for $201,000.00. The written release of claims stated that the consideration for the contract was $201,000.00. Mrs. Beck testified she agreed to the $201,000.00 settlement because she believed the limits for the two insurance policies were $100,000.00 each. There is no evidence that the Becks thought they were settling for $1,101,000.00.

Further, the release of the claims states it "contains the ENTIRE AGREEMENT between the parties hereto, and the terms of [the] Release are contractual and not a mere recital." It also stated: "We further state that we have carefully read the foregoing Release and know the contents thereof, and sign the same as our own free act." The release is not only signed by both the Becks but is also signed by the bankruptcy trustee and the Becks' attorney.

■ Because the release was in writing, it supersedes all oral stipulations or negotiations which preceded its execution. Okla. Stat. tit. 15, § 137 (1991). Parol evidence was not admissible to show a previous contradictory oral agreement. *Johnston, Inc. v. Wilson,* 358 P.2d 205, 206, 208 (Okla.1959). For these reasons, we find that the agreement was for $201,000.00.

## III. Mutual Mistake of Fact

The Becks, Dr. Reynolds, and PLICO agreed to the settlement of $201,000.00 under a mistake that the policy limits for all the years PLICO provided coverage was $100,-000.00 when it was $1,000,000 in 1984. The evidence shows that the parties intended to settle the case for $201,000.00. The Becks were paid $201,000.00 and then dismissed the case. The Becks admit they thought they were settling the case for $201,000.00. Likewise, the evidence shows PLICO intended only to be responsible for $100,000.00 of the settlement. PLICO would never have settled for $1,000,000.00.

We are not deciding whether the 1984 policy limit applies. That issue is not before this Court. Nonetheless, it is clear the parties thought the policy limits for all years of the PLICO coverage was $100,000.00 and based the settlement agreement on this mistaken belief.

■ In order to have a valid contract there must be mutual consent, or a meeting of the minds. Okla.Stat. tit. 15, §§ 2, 66 (1991); *Cimarron Pipeline Construction, Inc. v. United States Fidelity & Guaranty Ins. Co.,* 848 P.2d 1161, 1164 (Okla.1993); *Smalley v. Bond,* 92 Okla. 178, 218 P. 513, 515 (1923). "The consent of the parties must be mutual, and consent is not mutual unless the parties all agree upon the same thing in the same [sense]." *Smalley,* 218 P. at 515; *Raffles v. Wichelhaus,* 2 H. & C. 906, 159 Eng.Rep. 375 (Ex. 1864). Because the parties did not "agree upon the same thing in the same sense," there was no mutual consent, and thus no contract to reform.

■ Section 233 of title 15 provides that a party may rescind a contract when consent was given by mistake. Rescission, not reformation, is the proper remedy when an apparent contract is made because of mutual mistake of fact even when the contract has been executed. *Watkins v. Grady County Soil and Water Conservation Dist.,* 438 P.2d 491, 495 (Okla.1968).

■ When a contract is subject to rescission, the injured party may either (1) enforce the contract or (2) rescind the contract and all the parties will be restored to their original positions. *Dusbabek v. Bowers,* 173 Okla. 53, 43 P.2d 97 (1935). Because the $201,000.00 settlement agreement has been executed, the Becks may adhere to the agreement or void the contract and have the dismissal set aside. However, they are attempting to "compel" a different settlement agreement than the one which the parties intended. This they may not do.

Because the proper remedy in this case is to allow the Becks, the injured parties, to either adhere to the agreement or rescind the contract, the trial improperly reformed the contract and entered judgment against PLICO. The Court of Appeals correctly found the contract was formed based on a mutual mistake but did not apply the proper

remedy. Thus, the opinion of the Court of Appeals is vacated, the judgment of the trial court is reversed, and the case is remanded to the trial court.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; REVERSED AND REMANDED WITH INSTRUCTIONS.

WILSON, C.J., and LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

KAUGER, V.C.J., concurs in part, dissents in part.

SUMMERS and WATT, JJ., dissent. (I would affirm the decision of the trial court.)

SUMMERS, Justice, dissenting.

The case was settled in mid-trial and this colloquy took place:

> THE COURT: "Let the record show we're convened in chambers, out of the presence of the jury.
> Counsel have an announcement?"
>
> MR. HAYES: "Yes, Your Honor. We have reached a settlement, which is the defendant will pay the policy limits, which is $200,000.00."

(There were two insurance policies.)

When it later developed the policy limits on one policy was one million dollars, not $100,000.00, plaintiff sought to reform the settlement. The trial court, after taking testimony, in effect gave plaintiff the equitable remedy of reformation. The judge also found that the plaintiff's injuries would have supported a settlement under the policy limits. Our appellate burden in such matters is to affirm unless the lower court's ruling was contrary to the law or the clear weight of the evidence. *Merrill v. Oklahoma Tax Commission*, 831 P.2d 634, 640–641 (Okla.1992); *Robert L. Wheeler, Inc. v. Scott*, 818 P.2d 475, 479–480 (Okla.1991).

Even though parol evidence which is inconsistent with a written agreement is generally not admissible to vary the writing, parol evidence is admissible to show fraud, either actual or constructive. *Oklahoma Co. v. O'Neil*, 440 P.2d 978, 979 (Okla.1968). In this case parol evidence was admissible to show constructive fraud.

Constructive fraud is defined as: "[A]ny breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him." 15 Okla.Stat. (1991) § 59. Constructive fraud does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose. *Faulkenberry v. Kansas City Southern Ry. Co.*, 602 P.2d 203, 206 (Okla.1979). The insurance company's honest misrepresentation of the policy limits here was a typical case of constructive fraud.

In *Gentry v. American Motorist Ins. Co.*, 867 P.2d 468, 472 (Okla.1994) we said:

> Where the evidence establishes constructive fraud that induced the defrauded party to agree to the contract, the instrument may be reformed to conform to the representations of the parties.

Pomeroy wrote:

> *Equity has jurisdiction to reform written instruments in but two well-defined cases:* 1. Where there is a mutual mistake,—an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and *2. Where there has been a mistake of one party accompanied by the fraud or other inequitable conduct of the remaining parties.* In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties.

4 *Pomeroy's Equity Jurisprudence and Equitable Remedies*, § 1376 at 2725 (3d ed. 1905), (emphasis added).

Pomeroy's example number two fits here: a mistake as to the policy limits on the part of the plaintiff "accompanied by the fraud or other inequitable conduct of the remaining part[y]", the insurance company.

The Court's substitution of rescission for reformation does little equity. The plaintiff is left to accept the inequitably induced settlement or start all over in court with a now deceased defendant. The insurance company

is not really sanctioned for its inequitable misrepresentations.

I would reform the contract of settlement as did the District Court, but with this variation. Before the plaintiff was told the incorrect policy limits the plaintiff had offered to settle for $499,000.00. That being so I would hold the plaintiff estopped to now press for the full one million dollars coverage. In equity the appellate tribunal may render the relief that the chancellor should have. *Matter of Estate of Bartlett*, 680 P.2d 369, 374 (Okla.1984). Therefore I would reform the settlement to be within the actual policy limits of one million dollars, but not to exceed the amount the plaintiff would have settled for, or $499,000.00. Plaintiff should have judgment in that latter amount.