OSCN Found Document:ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.2023 OK 105Case Number: 119644Decided: 11/07/2023THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 105, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

ACCIDENT CARE AND TREATMENT CENTER, INC.; SOUTHWEST REGIONAL IMAGING AND RADIOLOGY, LLC; INJURY RECOVERY PHYSICAL THERAPY, LLC; and INTERVENTIONAL RADIOLOGY ASSOCIATES, LLC, Plaintiffs/Appellees,
v.
CSAA GENERAL INSURANCE COMPANY d/b/a AAA Insurance Company, Defendant/Appellant.

ON WRIT OF CERTIORARI TO THE
COURT OF CIVIL APPEALS, DIVISION IV

¶0 Medical providers sued insurance company to enforce their perfected medical liens for professional services rendered to a person injured in a car accident. Insurance company disputed the (1) reasonableness of the charges, and (2) necessity of the services. Medical providers argued that the insurance company had no legal standing to dispute these issues, absent an assignment from the injured party. Although Insurance company prepared the "Release" with the injured person, it failed to include such an assignment. Insurance company argued that in spite of this omission, there was an "implied" assignment from the injured party as evidenced by precontract settlement discussions. The trial court ruled that there was no assignment in the executed written release and that insurance company was barred by the Parol Evidence Rule from presenting evidence to establish an implied assignment. The Court of Civil Appeals reversed the trial court holding that summary judgment was not proper when there was a question of fact surrounding the issue of an assignment. We find there is no assignment in the executed release and further that there is no question of fact on material issues; we hold that without evidence of fraud, precontract negotiations and all discussions are merged into and superseded by the terms of an executed written release. The decision of the Court of Civil Appeals is vacated; and this matter is remanded to the trial court for proceedings consistent with this Opinion.

COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT
OF TRIAL COURT AFFIRMED; MATTER REMANDED FOR
PROCEEDINGS CONSISTENT WITH THIS OPINION

T. Matthew Smith, Criterion Legal, Oklahoma City, Oklahoma, for Plaintiffs/Appellees, Accident Care and Treatment Center, Inc., Southwest Regional Imaging and Radiology, L.L.C., Injury Recovery Physical Therapy, L.L.C., and Interventional Radiology Associates, L.L.C.

Austin R. Vance, Whitten Burrage, Oklahoma City, Oklahoma, for Plaintiffs/Appellees, Accident Care and Treatment Center, Inc., Southwest Regional Imaging and Radiology, L.L.C., Injury Recovery Physical Therapy, L.L.C., and Interventional Radiology Associates, L.L.C.

Maurice G. Woods II, Kelsey A. Chilcoat, Oklahoma City, Oklahoma, for Defendant/Appellant, CSAA General Insurance Company d/b/a AAA Insurance Company

Edmondson, J.

¶1 We are presented with the question of whether an insurance company that drafted a settlement release and failed to include language for an assignment, may introduce parol evidence to try and prove the Releasor/injured party assigned certain rights to insurance company giving it legal standing to dispute medical liens. We hold, absent fraud, a release which is in writing and where the parties affirmatively warranted "that no promise or inducement has been offered except as herein set forth," supersedes all oral stipulations or negotiations preceding its execution, and parol evidence is not admissible to modify or change the release.

FACTS AND PROCEDURAL HISTORY

¶2 Medical Providers1 rendered medical care to Gayla Hamilton after she was injured in a car accident caused by the alleged negligence of others. Hamilton filed a claim with CSAA General Insurance Company, insurance carrier for the individuals allegedly responsible for the accident. It is undisputed that each of the named Medical Providers filed a "Notice of Medical Service Lien" against "AAA Claim # 1002-63-3017," the claim number assigned by CSAA for Hamilton's claim for injuries from this accident. It is undisputed that CSAA had actual notice of these liens.

¶3 CSAA and Hamilton arrived at a settlement, agreeing that an outright payment of Seven Thousand Five Hundred Dollars ($7,500.00) would be paid to Hamilton and separate payments were to be issued to each of the Medical Providers in amounts less than their filed medical liens. It is undisputed that CSAA did not have the consent of Medical Providers to reduce their medical liens. CSAA prepared the written release for Hamilton and was solely responsible for the terms. By signing the settlement contract, Hamilton agreed to release the alleged tortfeasors and their insurer, CSAA. CSAA also included the following paragraph noting that Hamilton warranted that the release was signed without any other promise or inducement:

The Releasor [Hamilton] warrants that no promise or inducement has been offered except as herein set forth; that this release is executed without reliance upon any statement or representation by the person or parties released, or their representatives, their physicians, or any other person, concerning the nature and extent of the damage and consequential damages, if any, and of legal liability therefor, if any; and that the Releasor is of legal age, legally competent to execute this release and accepts full responsibility therefor. 2 (Emphasis added.)

CSAA included the following indemnification provision wherein Hamilton agreed to indemnify CSAA against any liens "including medical services" necessitated from the accident:

The Releasor [Hamilton] hereby agrees to defend, indemnify and hold harmless the Releasee [the alleged tortfeasors] and his/her/its Insurer(s) [CSAA], against any claims, liens, demands, actions and causes of action asserted by any person, corporation, insurer, governmental entity or other entity seeking reimbursement of funds incurred or paid to or on behalf of the Releasor for any purpose, which payments (including medical services) were necessitated or allegedly caused as a result of the accident or incident described above, that now exist, or may hereafter accrue against the Releasee.3 (Emphasis added).

CSAA also stated that Hamilton was responsible for distributing "all funds received as may be necessary to satisfy all past, present, or future medical expenses."4

¶4 Medical Providers sued CSAA to enforce their medical liens after CSAA paid settlement monies to Hamilton without honoring their liens. The remaining balances due under the liens exceeded the $7,500 paid to Hamilton; but Medical Providers limited the relief requested to the amount paid to Hamilton. In addition, they sued to recover damages for tortious interference with contractual relations and punitive damages. Medical Providers filed a motion for partial summary judgment seeking damages protected by their liens, the amount paid to Hamilton for Seven Thousand Five Hundred Dollars ($7,500). The following are the material facts:

1. Accident Care and Treatment Center (ACTC) filed a notarized lien in the amount of $3,0192 for medical services. AAA Claim #:1002-63-3017 and mailing address were listed on the lien which was filed with the Oklahoma County Clerk.

2. Southwest Regional Imaging and Radiology, LLC, Stanley Dombek, M.D. (SWRI) filed a notarized lien in the amount of $8,333.50 for medical services. AAA Claim #:1002-63-3017 and mailing address were listed on the lien which was filed with the Oklahoma County Clerk.

3. Injury Recovery Physical Therapy, LLC, (IRPT) filed a notarized lien in the amount of $2,694.49 for medical services. AAA Claim #:1002-63-3017 and mailing address were listed on the lien which was filed with the Oklahoma County Clerk.

4. Interventional Radiology Associates, LLC (IRA) filed a notarized lien in the amount of $19,491.94 for medical services. AAA Claim #:1002-63-3017 and mailing address were listed on the lien which was filed with the Oklahoma County Clerk.

5. On December 18, 2018, CSAA settled with Hamilton and paid her $7,500.00 without including Plaintiffs' names on the check.

6. CSAA issued checks payable to Medical Providers in amounts less than their filed liens. The current balance due under each lien is $646.68 for ACTC, $2,308 for SWRI, $830 for IRPT, and $4,696.06 for IRA. Medical Providers sought only the amount paid to Hamilton, $7,500.00, which is less than the remaining lien balances.

The two additional claims for tortious interference with contract and punitive damages were later dismissed without prejudice. 5 The only remaining claims to be adjudicated are the enforcement of the medical liens, the subject of the summary judgment motion before us.

¶5 CSAA did not dispute any material fact which Medical Providers listed in their summary judgment motion. CSAA's response to each of the material facts listed by Medical Providers was: "undisputed."

¶6 CSAA next asserted there were the following two additional material facts which were disputed requiring the denial of summary relief. CSAA unequivocally stated the following:

1. In the settlement between Defendant and the claimant, Defendant received an assignment from the claimant, granting Defendant an option to resolve her medical bills itself in any of several ways.

2. Defendant chose to exercise that option by challenging the correctness and validity of the debt underlying the Plaintiff's claimed lien. 6

The Court notes the record before us does not support either of these statements.

¶ 7 CSAA stated that "Gayla Hamilton agreed that Plaintiff's medical bills were unreasonably high and gave CSAA permission to issue payment to Plaintiffs at a reduced amount."7 CSAA concluded that "this conduct constitutes evidence of an implied assignment from Gayla Hamilton to CSAA to negotiate to resolve her medical bills and/or challenge the liens filed by Plaintiffs."8 CSAA cites no legal authority to support this unique concept of an "implied assignment." There is no evidence in the record to support the statement that Hamilton agreed the medical bills were "unreasonably high;" moreover, it is irrelevant. We do note that Hamilton did execute the release which acknowledges payment to Medical Providers in amounts less than their liens.

¶8 CSAA goes on to urge that (1) the claims adjuster notes and (2) the letter from CSAA to Hamilton transmitting the release create a "question of fact" supporting the denial of summary judgment. There is no support in the record through these documents or otherwise to support there was any discussion about an assignment. The letter is a basic transmittal letter instructing Hamilton how to properly execute the release. The most notable discussion in the adjustor notes is CSAA clearly acknowledging the liens, the intention to issue settlement checks without paying the liens in full, and CSAA's adjustor advising Hamilton "that the providers she used typically inflate their billing, and we would only be responsible for the usual, reasonable, and customary charges;"9 CSAA argued that under the guidance of the Court of Civil Appeals in a prior similar action with Medical Providers, that CSAA would have the authority to dispute the amount claimed in the liens "if [the claimant] assigned to CSAA his right to challenge the amount due." Accident Care and Treatment Center v. CSAA General Insurance Co., (Accident Care I), 2021 OK CIV APP 3, ¶ 37, 483 P.3d 1,11. There is no evidence in the record of an assignment.

¶9 In reply, Medical Providers agreed that if CSAA had such an assignment, it would have the legal standing to challenge the liens. Medical Providers argued that there was no such assignment in the executed release and CSAA offered no evidence to support such an argument. We agree. This Court has announced that "an assignment is the expressed intent of one party to pass rights owned to another." Randall v. Travelers Casualty and Surety Co., 2006 OK 65, ¶ 22, 145 P.3d 1048, 1054. (emphasis added). Medical Providers also argued that if Hamilton had given an assignment to CSAA, there would be nothing for her to agree to with respect to the payment amounts to the Medical Providers. They also note that "nothing within any of Defendant's exhibits passes a right from the patient to Defendant."10

¶10 The trial court after reviewing the Medical Providers' motion, Defendant's response and Medical Providers' reply thereto, and hearing arguments from the parties, sustained Medical Providers' motion for partial summary judgment. The trial court entered the following Journal Entry:

FINDS, ORDERS, ADJUDGES and DECREES as follows:

1. Plaintiff's Motion to Amend Liens is sustained.

2. There is no evidence of an assignment by the claimant, Gayla Hamilton, to Defendant because the text of the release contract between Hamilton and Defendant did not contain such an assignment, and under the Parol Evidence Rule evidence outside the four corners of the contract may not be considered to vary the substantive terms of the release. Therefore, because CSAA's right to challenge the Plaintiff's liens only exists if the right was assigned to Defendant by the Claimant (Hamilton), Plaintiff's Motion for Partial Summary Judgment is sustained.

¶11 The Defendant, CSAA filed a Petition in Error raising two issues: (1) whether evidence of an implied assignment by one party to another may be found outside the four corners of a Release Contract entered into by those same two parties; and (2) whether the trial court erred in applying the parol evidence rule to preclude evidence that an assignment occurred between those parties which was not memorialized in the Release Agreement between the parties.

¶12 Medical Providers responded that CSAA intentionally violated the provisions of the medical lien statute, 42 O.S.2011, § 46(B), when it had knowledge of the liens and settled Hamilton's claim and issued checks to Medical Providers in amounts less than their liens. They also argued that the trial court was correct in holding that extrinsic parol evidence outside the terms of the written release could not be considered to alter the executed contract.

¶13 The Court of Civil Appeals reversed the decision of the trial court and remanded for further proceedings determining that the trial court erred when it failed to make a finding whether there was a question of material fact present in the summary judgment record regarding any claimed separate, oral agreement between Hamilton and CSAA assigning her rights to challenge Plaintiff's lien amounts.11

¶14 Medical Providers filed a Petition for Certiorari noting that the Court of Civil Appeals relied on its prior opinion, Accident Care I, which was not reviewed by this Court, and further expanded its holding in the instant matter. The effect of CSAA's settlement tactics has been to usurp the medical lien process in violation of Section 46. They urge that the Court of Civil Appeals in its decision has created a mechanism for insurance companies to sidestep the Oklahoma medical lien process. The case before us was one of seven cases that were pending in Oklahoma County District Court between the same parties on this identical issue. Medical Providers note that under the current decision of the Court of Civil Appeals insurers can assert that any communication -- even those prior to a written settlement contract -- implicitly convey an assigned right to dispute medical lien amounts. The concern is that accident victims will no longer receive quick treatments, as medical providers like the parties herein will have no guarantee of payment unless there is pre-approval by the tortfeasor's insurer. Medical Providers also urge that the Court of Civil Appeals decided a question of substance in a way not in accord with applicable decisions of this Court. Specifically, the decision violates precedents on contract law: (1) the execution of a contract in writing supersedes all prior oral negotiations concerning its matter, Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541, 546; and (2) all prior communications are assumed to be part of the written agreement, Ollie v. Rainbolt, 1983 OK 79, ¶12, 669 P.2d 275, 279 (citing 15 O.S. § 137).

¶15 CSAA answered that under Accident Care I, the Court of Civil Appeals "in reversing and remanding, reasoned and held in pertinent parts:"12 gave CSAA the right to challenge the correctness of the debt because of the extrinsic evidence showing communications between Hamilton and CSAA and also simply by the act of Hamilton signing the release she assigned to CSAA her right to contest the amount owed under the liens.13 The Court of Civil Appeals did not so hold. While this language does appear in Accident Care I, this was not a holding as asserted by CSAA, rather the Court of Civil Appeals was simply stating CSAA's argument on appeal.14 CSAA offered no legal authority for this novel idea of an implied assignment through execution of a settlement contract in Accident Care I, nor in the instant matter. CSAA urged for an extension of Accident Care I that "the alleged assignment does not have to be clearly written in the release in order to be valid." CSAA also argued that the Court of Civil Appeals' decision is not incongruent with any applicable decisions of this Court and that it did not depart from the usual course of judicial proceedings negating this Court's powers of supervision.

¶16 On February 6. 2023 we granted Medical Providers' Writ of Certiorari.

STANDARD OF REVIEW

¶17 Summary judgment settles only questions of law; we review de novo the grant of summary judgment. Am. Biomedical Grp. v. Techtrol, Inc., 2016 OK 55, ¶ 2, 374 P.3d 820, 822. Following this standard, we confine our review to the limited, undisputed, material facts. Video Gaming Technologies, Inc. v. Rogers Co. Bd of Tax Roll Corrections, 2019 OK 83, ¶ 2, 475 P.3d 824, 825.

ANALYSIS

¶18 A written contract excludes prior oral negotiations and stipulations as reflected by statute:

The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument. 15 O.S.2011, § 137.

A settlement release which is in writing "supersedes all oral stipulations or negotiations which preceded its execution." Beck v. Reynolds, 1995 OK 83, ¶ 8, 903 P.2d 317, 319. Oral evidence was not permitted in Beck to establish a previous contradictory oral agreement.

¶19 Contract terms are construed most strongly against the drafter of the contract. McMinn v. City of Oklahoma City, 1997 OK 154, ¶¶ 13-15, 952 P.2d 517, 522. This issue most often arises between the two parties to the contract where one party is asserting that the contract is susceptible of differing constructions. We noted in McMinn, that City, the drafter of the contract, was the one who chose the terms to be used in the contract and chose a broader term. City then urged a more narrow meaning was intended but we noted it would be "unfair and illogical to interpret the contract in its most narrow sense" to limit the benefits to the opposing party while providing additional benefits to persons employed by the City.

¶20 In the matter before us, the Release prepared solely at the hands of CSAA, a document that was between CSAA and a stranger to this litigation, the claimant, CSAA had sole control over the drafting of its Release. CSAA irrefutably had knowledge and notice of the Medical Providers' liens, was aware that Medical Providers could in the future sue to collect for additional funds owed, and sue the claimant, Hamilton. With this knowledge, CSAA carefully included an indemnification agreement between it and Hamilton, that Hamilton was contractually bound to indemnify CSAA in the event that Medical Providers should sue CSAA to collect additional amounts owed from medical services rendered to Hamilton. CSAA clearly envisioned the possibility of Medical Providers suing, with full knowledge it was settling this claim with Hamilton and paying her without notice to Medical Providers and without satisfying the filed medical liens. However, CSAA did not include any provision for an assignment in the Release. We hold that the Release prepared by CSAA and executed by Hamilton was clear and not ambiguous. We find that there was no assignment by Hamilton to CSAA. Even if we found an ambiguity, the release would be interpreted most strictly against the drafter, CSAA.

¶21 We also note that CSAA specifically drafted the following in the settlement agreement that "no promise or inducement has been offered except as herein set forth, that this release is executed without reliance upon any statement or representation by the person or parties released or their representatives [CSAA]."15 CSAA's assertion there was a separate agreement of an assignment between it and Hamilton, contradicts this provision of the executed settlement release. There is nothing in the record to support any suggestion of a discussion regarding an assignment between the parties. Even if there was, the introduction of parol evidence to so establish this would be barred in this instance as it would contradict the terms of the executed written settlement contract, that there were no other promises relied on by the parties or their representatives. Beck, supra; Ollie v. Rainbolt, 1983 OK 79, ¶ 12, 669 P.2d 275, 279 (Parol evidence cannot vary, modify or contradict the terms of the instrument). A contract that is complete, when viewed in its entirety is unambiguous, and the written words of the document are the only legitimate evidence of the parties' intention. Id.

¶22 Medical Providers prepared and filed liens to protect their right to be paid for the medical services they provided to Hamilton which arose from a car accident due to the alleged negligence of CSAA's insureds. CSAA admitted that Medical Providers had each filed their respective liens and in the amount reflected for their medical services. Medical Providers had a statutory lien upon any monies payable by the insurer to the injured person. Our Legislature provided for this statutory protection as follows:

Physician's lien

A. Every physician who performs medical services or any other professional person who engages in the healing arts, within their scope of practice pursuant to Title 59 of the Oklahoma Statutes for any person injured as a result of the negligence or act of another, shall, if the injured person asserts or maintains a claim against such other person for damages on account of such injuries, have a lien for the amount due for such medical or healing arts services upon that part going to or belonging to the injured person of any recovery or sum had or collected or to be collected by the injured person, or by the heirs, personal representative, or next of kin of the injured person in the event of his death, whether by judgment, settlement, or compromise. Such lien shall be inferior to any lien or claim of any attorney handling the claim for or on behalf of the injured person. The lien shall not be applied or considered valid against any claim for amounts due pursuant to the provisions of Title 85A of the Oklahoma Statutes.
B. In addition to the lien provided for in subsection A of this section, every physician or professional person licensed under Title 59 of the Oklahoma Statutes who performs medical or healing arts within their scope of practice for any person injured as a result of the negligence or act of another, shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for such medical or healing arts services upon any monies payable by the insurer to the injured person.

42 O.S.2011, § 46. (emphasis added). This section also states that before the lien will become effective the physician or other medical provider must send written notice among other requirements. Section 46 goes on to provide that the liens provided for "may be enforced by civil action in the district court of the county where the lien was filed." Section 46 (D). This action must be brought within one year after the physician or professional person becomes aware of final judgment, settlement or compromise of the claim. There is no dispute that Medical Providers complied with the terms of these provisions with respect to the filing of their liens, notice of the liens, and timely filing their action after Hamilton settled her claim with CSAA.

¶23 We have recognized that "the legislative intent of § 46 was to encourage physicians to provide medical services to persons who have been injured by another and have insufficient funds or insurance to pay for the services when delivered." Balfour v. Nelson, 1994 OK 149, ¶ 11, 890 P.2d 916, 919. Section 46 was also "designed to insure that physicians are paid for their services once their patients are compensated for their injuries." Id. CSAA has expressed concern regarding the reasonableness of Medical Providers' charges and attempted to use this concern as a way to thwart the protected interests of those who rendered medical care to Hamilton. Absent an assignment from the claimant, Hamilton, CSAA has no legal standing to raise this argument as a defense to the claims.

¶24 We hold as a matter of law, there are no disputed material facts at issue in the matter before us. The release prepared by CSAA and executed by Hamilton is clear and unambiguous and has no language supporting an assignment from Hamilton to CSAA to argue the reasonableness of the liens filed by Medical Providers. We further find there was no evidence in the record to support a suggestion of an assignment between the parties within the extrinsic evidence submitted by CSAA. Furthermore, a written release in settlement of a claim absent fraud, supersedes all oral stipulations or negotiations which precede its execution, and parol evidence is not admissible to show previous contradictory oral agreements. In the release before us, CSAA specifically included a provision that "no other promise or inducement has been offered except as herein set forth." CSAA as the drafter is barred from introducing any parol evidence in an attempt to render this provision without meaning.

¶25 The decision of the Court of Civil Appeals is vacated. The decision of the trial court is affirmed. This matter is remanded to the trial court for proceedings consistent with this Opinion.

COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT
OF TRIAL COURT AFFIRMED; MATTER REMANDED FOR
PROCEEDINGS CONSISTENT WITH THIS OPINION

Rowe, V.C.J., Kauger, Winchester, Edmondson, Combs, Gurich, Darby, Kuehn, JJ., Concur.

Kane, C.J., Recused.

FOOTNOTES

1 Accident Care and Treatment Center, Inc., Southwest Regional Imaging and Radiology, L.L.C., Injury Recovery Physical Therapy, L.L.C., and Interventional Radiology Associates, L.L.C., Plaintiffs, (Medical Providers).

2 ROA, Doc. #3, Plfs. Mot. Partial S.J., Ex. 6.

3 Id.

4 Id.

5 Def./Aplt. Resp. to Show Cause, #119644, July 6, 2021.

6 ROA, Doc. #4, Def. Resp. to Plf. Mot. S.J.

7 Id.

8 Id.

9 Id., Ex. 1. There is nothing in the Record to support the statement: "Gayla agreed that Plaintiff's medical bills were unreasonably high..."

10 ROA, Doc. #6, Reply to Mot. S.J.

11 Opinion, Court of Civil App., Div. IV, Case No. 119,644, May 16, 2022.

12 Def./Applt. Answer in Oppos. to Appellees' Pet. for Writ of Cert., filed June 21, 2022.

13 Id.

14 Id.

15 ROA, Doc. #3, Plfs. Mot. Partial S.J., Ex. 6.

 

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2021 OK CIV APP 3, 483 P.3d 1,
ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1994 OK 149, 890 P.2d 916, 65 OBJ 4173,
Balfour v. Nelson
Discussed

 
1995 OK 83, 903 P.2d 317, 66 OBJ 2408,
Beck v. Reynolds
Discussed

 
2003 OK 5, 63 P.3d 541,
PITCO PRODUCTION COMPANY v. CHAPARRAL ENERGY, INC.
Discussed

 
2006 OK 65, 145 P.3d 1048,
RANDALL v. TRAVELERS CASUALTY & SURETY COMPANY
Discussed

 
2016 OK 55, 374 P.3d 820,
AMERICAN BIOMEDICAL GROUP, INC. v. TECHTROL, INC.
Discussed

 
2019 OK 83,
VIDEO GAMING TECHNOLOGIES v. ROGERS COUNTY BD. OF TAX ROLL CORRECTIONS
Cited

 
1997 OK 154, 952 P.2d 517, 69 OBJ 42,
McMINN v. CITY OF OKLAHOMA CITY
Discussed

 
1983 OK 79, 669 P.2d 275,
Ollie v. Rainbolt
Discussed at Length

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 137,
Execution of Written Contract Supersedes Oral Negotiations or Stipulations
Discussed

Title 42. Liens

 
Cite
Name
Level

 
42 O.S. 46,
Lien for Medical Services
Discussed

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA